## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| John Velez, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| City of Chicago; Chicago Police Officers | ) | |
| Michael R. Bocardo, Michael Dyra, John A. | ) | |
| Cruz, Sam Cirone, Patrick O₵Donovan, | ) | |
| Kriston Kato, Bradul A. Ortiz, Michael J. | ) | |
| Walsh, Victor M. Perez, D. Wolverton | ) | |
| (#20014), J. Botwinski (#20392), A. | ) | JURY TRIAL DEMANDED |
| Jaglowski (#20196), Sgt. D. Walsh, John | ) | |
| Farrell, James Davis, John Sullivan, and | ) | |
| Unknown Officers; Cook County Assistant | ) | |
| State₵ Attorney Megan Goldfish; and Cook | | |
| County, | | |
| | | |
| Defendants. | | |

## COMPLAINT

Plaintiff John Velez, by his attorneys, Loevy & Loevy and the Law Office of Jennifer Blagg, complains of Defendants City of Chicago; Chicago Police Officers Michael R. Bocardo, Michael Dyra, John A. Cruz, Sam Cirone, Patrick O₵Donovan, Kriston Kato, Bradul A. Ortiz, Michael J. Walsh, Victor M. Perez, D. Wolverton (#20014), J. Botwinski (#20392), A. Jaglowski (#20196), Sgt. D. Walsh, John Farrell, James Davis, John Sullivan, and Unknown Officers; Cook County Assistant State₵ Attorney Megan Goldfish; and Cook County, as follows:

## INTRODUCTION

1. Plaintiff John Velez was wrongfully convicted of the tragic 2001 murder of Anthony Hueneca, a crime he did not commit. Plaintiff spent sixteen years unjustly imprisoned solely because Defendants conspired among themselves to falsely implicate Plaintiff.

2. To secure Plaintiff₵ wrongful conviction, Defendants, including Chicago Police

Officers Michael Bocardo and Michael Dyra, engaged in misconduct including fabricating false evidence, coercing witnesses, and withholding exculpatory evidence from prosecutors and from Mr. Velez.

3.     Cook County Assistant State's Attorney Megan Goldfish, while acting in an investigatory function before probable cause existed to arrest Plaintiff, was in on the conspiracy. She conspired with the law enforcement Defendants to fabricate evidence against Plaintiff.

4.     Due to Defendants' foul play, Plaintiff was convicted of Hueneca's death.

5.     In December 2017, after more than sixteen horrific years behind bars, Plaintiff was finally vindicated: the State agreed to his petition for post-conviction relief, moved the Court to vacate his conviction, and dismissed all charges against him.

6.      Now free, but still encumbered by the enduring effects of his wrongful conviction, Plaintiff brings this action to obtain justice and redress the devastating injuries that Defendants have caused him.

## JURISDICTION AND VENUE

7.     This action is brought pursuant to 42 U.S.C. § 1983 to redress Defendants' deprivation of Plaintiff's rights secured by the U.S. Constitution.

8.     This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367.

9.     Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district, the majority of the Defendants reside in this judicial district, and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

## PARTIES

10.     Plaintiff John Velez is a resident of Cook County, Illinois, who spent approximately sixteen years behind bars for a crime he did not commit.

11.     Defendant City of Chicago is an Illinois municipal corporation and is and/or was the employer of each of the Defendant Officers.  The City of Chicago is liable for the acts of the Defendant Officers, which were undertaken within the scope of their employment for the City.

12.     At all times relevant hereto, Defendants Michael R. Bocardo, Michael Dyra, John A. Cruz, Sam Cirone, Patrick O'Donovan, Kriston Kato, Bradul A. Ortiz, Michael J. Walsh, Victor M. Perez, D. Wolverton (#20014), J. Botwinski (#20392), A. Jaglowski (#20196), Sgt. D. Walsh, John Farrell, James Davis, John Sullivan, and other unknown law enforcement officers (collectively, the "Defendant Officers") were police officers in the Chicago Police Department acting under color of law and within the scope of their employment for the City of Chicago. The supervisory defendants facilitated, condoned and approved the constitutional violations committed by their subordinates.

13.     At all relevant times, Megan Goldfish was an Assistant Cook County State's Attorney acting under color of law and within the scope of her authority. Goldfish conspired with the Defendant Officers, prior to the existence of probable cause to believe Plaintiff had committed a crime, and while acting in an investigatory capacity, to fabricate evidence, manipulate witness testimony, maliciously prosecute Plaintiff, and detain him without probable cause for Hueneca's murder.

14.     Defendant Cook County is a governmental entity within the State of Illinois and includes as a component its Cook County State's Attorney's Office. Defendant Cook County employed Defendant Goldfish at all relevant times. Defendant Cook County is a necessary party to this lawsuit.

## FACTS

15.     Shortly before 2 a.m. on March 19, 2001, 26-year-old Anthony Hueneca was tragically shot and killed while walking down the street in Chicago.

16.     Prior to shooting Hueneca, the perpetrator threatened several other victims in the area with a gun.

17.     Following the initial investigation, Defendants had no suspect, and so they decided to falsify and manufacture evidence so that they could close the case.

18.     Defendants selected as their scapegoat Mr. Velez, whom they believed to be a gang member, and who happened to be present at the police station after reporting that he had been the victim of a separate crime.

19.     Without any reason of any kind to believe that Mr. Velez had any involvement in the Hueneca murder, but with animosity towards Mr. Velez as a suspected gang member, Defendant Bocardo took a photograph of Mr. Velez. Defendant Bocardo then showed the photograph to one of the witnesses and manipulated and coerced him into falsely identifying Mr. Velez as the shooter.

20.     Defendants went on to fabricate additional false evidence and coerce false witness statements to pin Hueneca's death on Mr. Velez.

21.     To further secure his wrongful conviction, Defendants also withheld exculpatory evidence from Mr. Velez's defense.

22.     As a prosecutor, Defendant Goldfish would not have acted on her own to falsely implicate Plaintiff.

23.     As a prosecutor, Defendant Goldfish knew that she would need the help and active involvement of police officers to lodge false charges against Plaintiff. Indeed, Defendant Goldfish

joined the conspiracy only because she knew that the Defendant Officers would be complicit in securing the false evidence to frame the accused.

24. Defendant Goldfish would not have filed false charges against Plaintiff without the Defendant Officers' willingness to fabricate evidence and their success in so doing. In light of the Defendant Officers' ready willingness to falsify evidence and coerce witnesses to make false statements, Defendant Goldfish was willing to play her part in the conspiracy.

25. In other words, Defendant Goldfish would not have prosecuted Plaintiff but for the involvement and encouragement of the Defendants Officers. Indeed, Defendant Goldfish would never have prosecuted the case without having at least one police officer available to document and testify to the version of events that led to the initiation of charges against Plaintiff.

26. Defendant Goldfish needed the Defendant Officers to write false reports and back up their fabricated charges against Plaintiff. Without the involvement, agreement, and false reports of the Defendant Officers, Defendant Goldfish would never have initiated or continued the charges against Plaintiff.

### Plaintiff's Conviction

27. Defendants arrested Mr. Velez based exclusively on evidence they fabricated.

28. Plaintiff remained incarcerated from the date of his arrest, through his trial, and until his eventual exoneration.

29. Mr. Velez has consistently denied having any involvement in the Hueneca murder.

30. No inculpatory evidence other than the evidence fabricated by Defendants was relied upon at Plaintiff's criminal trial, at which he was found guilty of murder.

31. Without the Defendants' misconduct, Plaintiff would never have been prosecuted for or convicted of Hueneca's murder.

**Policy and Practice of Prosecuting Innocent Persons
in Violation of Due Process**

32.     The Chicago Police Department is responsible for scores of miscarriages of justice. Since 1986, no fewer than 70 documented cases have come to light in which Chicago Police Detectives amassed "evidence" against an innocent person for a serious crime that he did not commit. There are undoubtedly many more such cases that have not yet been discovered.

33.     The false charges against innocent people include numerous cases in which Chicago Police Officers used the very same tactics that Defendants used against Plaintiff in this case, including: (1) procurement of false witness testimony; (2) concealment of exculpatory evidence; (3) manipulation of witnesses in order to obtain false identifications; (4) manipulation of witnesses in order to influence their testimony; and (5) employment of other tactics to secure the arrest, prosecution and conviction of persons without regard to their actual guilt or innocence.

34.     At all times relevant hereto, members of the Chicago Police Department, including the Defendants in this action, routinely manufactured evidence against innocent persons by coercing, manipulating, threatening, pressuring, and offering inducements to witnesses to provide false statements implicating innocent persons, knowing full well that those statements were false. As a matter of widespread custom and practice, members of the Chicago Police Department, including the Defendants in this action, contrived false witness narratives that were fed to vulnerable witnesses who then adopted those false witness narratives as their own for the purpose of wrongly convicting an innocent person. Furthermore, Chicago Police Department officers systematically suppressed exculpatory and/or impeaching material by concealing evidence that a witness had been coerced, manipulated, threatened, pressured or offered inducements to make false statements.

6

35.     Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of Chicago, including the named Defendants, procured false testimony from witnesses knowing full well that their testimony was false and would lead to the wrongful conviction of Plaintiff. The improper tactics used to gain cooperation from these witnesses were concealed from Plaintiff.

36.     At all times relevant hereto, members of the Chicago Police Department, including the Defendants in this action, systematically suppressed exculpatory and/or impeaching material by intentionally secreting discoverable reports, memos and other information in files that were maintained solely at the police department and were not disclosed to the participants of the criminal justice system. As a matter of widespread custom and practice, these clandestine files were withheld from the State's Attorney's Office and from criminal defendants, and they were routinely destroyed at the close of the investigation, rather than being maintained as part of the official file.

37.     Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of Chicago, including the named Defendants, concealed exculpatory evidence from Plaintiff.

38.     At all times relevant hereto, members of the Chicago Police Department, including the Defendants in this action, routinely manipulated, tricked, lied to, and misled witnesses for the purpose of influencing their testimony to conform to a false narrative contrived by the officers themselves. As a matter of widespread practice and custom, these tactics were also used to induce false identifications of suspects.

39.     Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of Chicago, including the named Defendants, manipulated,

tricked, and improperly influenced the witnesses in this case to give false statements against Mr. Velez.

40.     The City of Chicago and the Chicago Police Department routinely failed to investigate cases in which Chicago Police Detectives recommended charging an innocent person with a serious crime, and no Chicago Police Officer has ever been disciplined for misconduct in any such case.

41.     Prior to and during 2001, the year in which Plaintiff was falsely charged with the Hueneca murder, the City of Chicago operated a dysfunctional disciplinary system for Chicago Police Officers accused of serious misconduct. The City's Office of Professional Standards almost never imposed significant discipline against police officers accused of violating the civil and constitutional rights of members of the public. The Chicago Police disciplinary apparatus included no mechanism for identifying police officers who were repeatedly accused of engaging in the same type of misconduct.

42.     As a matter of both policy and practice, municipal policy makers and department supervisors condoned and facilitated a code of silence with the Chicago Police Department. In accordance with this code, officers refused to report and otherwise lied about misconduct committed by their colleagues, including the misconduct at issue in this case.

43.     As a result of the City of Chicago's established practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct and facilitating a code of silence within the Chicago Police Department, officers (including the Defendants here) have come to believe that they may violate the civil rights of members of the public and cause innocent persons to be charged

with serious crimes without fear of adverse consequences. As a result of these policies and practices of the City of Chicago, members of the Chicago Police Department act with impunity when they violate the constitutional and civil rights of citizens.

44.     Defendant Bocardo and others have a history of engaging in the kind of misconduct that occurred in this case, including the fabrication and concealment of evidence. Defendants engaged in such misconduct because they had no reason to fear that the City of Chicago and its Police Department would ever discipline them for doing so.

45.     The City of Chicago and its Police Department failed in 2001 and in the years prior to provide adequate training to Chicago Police Detectives and other officers in any of the following areas, among others:

a.      The constitutional requirement to disclose exculpatory evidence, including how to identify such evidence and what steps to take when exculpatory evidence has been identified, to ensure that the evidence is made part of the criminal proceeding.

b.      The need to refrain from manipulative or potentially coercive conduct in relation to witnesses.

c.      The risks associated with relying on testimony from incentivized witnesses.

d.      The risks of wrongful conviction and the steps police officers should take to minimize risks.

e.      The risks of engaging in õtunnel visionö during an investigation.

f.      The need for full disclosure, candor, and openness on the part of all officers who participate in the police disciplinary process, both as witnesses and as accused officers, and the need to report misconduct committed by fellow officers.

46. The need for police officers to be trained in these areas was and remains obvious. The City's failure to train Chicago Police Officers as alleged in the preceding paragraph proximately caused Plaintiff's wrongful conviction and his injuries.

47. The City's failure to train, supervise, and discipline its officers, including repeat offenders such as Defendant Bocardo, effectively condones, ratifies, and sanctions the kind of misconduct that the Police Officer Defendants committed against Plaintiff in this case. Constitutional violations such as those that occurred in this case are encouraged and facilitated as a result of the City's practices and *de facto* polices, as alleged above.

48. The City of Chicago and officials within the Chicago Police Department failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiff's ongoing injuries.

49. The policies and practices described in the foregoing paragraphs were consciously approved by the City of Chicago policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

### Plaintiff's Exoneration

50. Plaintiff never stopped fighting to prove his innocence.

51. On December 11, 2017, more than sixteen years after Mr. Velez's arrest, the State moved to vacate his conviction and dismiss the charges against him, and the court granted the request.

### Plaintiff's Devastating Injuries

52. Plaintiff's injuries have been devastating.

53.     During his sixteen years of wrongful imprisonment, Plaintiff was deprived of the ability to interact freely with his loved ones; to be present for holidays, births, deaths and other life events; to pursue his passions and interests; to engage in meaningful labor and develop a career; and to live freely, as an autonomous being.

54.     Instead, Plaintiff was detained in harsh, dangerous, and isolating prisons, branded a murderer.

55.      As a result of his wrongful conviction and incarceration, Plaintiff must now attempt to rebuild his life outside of prison, all without the benefit of the life experiences that ordinarily equip adults for such a task.

56.     In addition to causing the severe trauma of Plaintiff's wrongful imprisonment and loss of liberty, Defendants' misconduct caused and continues to cause Plaintiff extreme physical and psychological pain and suffering.

57.     The misconduct committed by Defendants was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence, and each Defendant is liable for punitive damages, as well as other relief described below.

**Count I – 42 U.S.C. § 1983**
**Due Process: Fabrication of Evidence**

58.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

59.     As described more fully above, Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial by fabricating false evidence against Plaintiff.

60.     In the manner described more fully above, Defendants fabricated, coerced, manipulated and/or solicited false testimony from witnesses implicating Plaintiff in the crime that they knew he did not commit; falsified police reports; obtained Plaintiff's conviction using that false evidence; and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff at his criminal trial.

61.     Defendants' misconduct resulted directly in the unjust criminal conviction of Plaintiff, thereby depriving him of his constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, Plaintiff's prosecution could not, and would not, have been pursued.

62.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

63.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great emotional pain and suffering, and other grievous and continuing injuries and damages.

64.     The misconduct described in this Count by the Defendant Officers was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below, in Count VI.

### Count II – 42 U.S.C. § 1983
### Due Process: *Brady* Violations

65.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

66.     As described in detail above, the Defendant Officers, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial by withholding and

suppressing exculpatory evidence. In the manner described more fully above, the Defendant Officers deliberately withheld exculpatory evidence from Plaintiff and from the prosecution, among others, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

67.     In addition, in the manner described more fully above, the Defendant Officers knowingly fabricated and solicited false evidence implicating Plaintiff in the crime; obtained Plaintiff's conviction using that false evidence; and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff at his criminal trial.

68.     The Defendant Officers' misconduct resulted directly in the unjust criminal conviction of Plaintiff, thereby denying his constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

69.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

70.     As a result of the Defendant Officers' misconduct described in this Count, Plaintiff suffered loss of liberty, great emotional pain and suffering, and other grievous and continuing injuries and damages.

71.     The misconduct described in this Count by was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count VI.

**Count III – 42 U.S.C. § 1983**
**Deprivation of Liberty and Detention without Probable Cause**

72.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

13

73.     In the manner described more fully above, the individual Defendants, individually, jointly, and in conspiracy with one another, and others, as well as under color of law and within the scope of their employment, used false evidence that they had manufactured in order to accuse Plaintiff of criminal activity and cause the detention of Plaintiff, without probable cause.

74.     In so doing, these Defendants caused Plaintiff to be deprived of his liberty and detained without probable cause, in violation of his rights secured by the Fourth and Fourteenth Amendments.

75.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

76.     As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great emotional pain and suffering, and other grievous and continuing injuries and damages.

77.     The misconduct described in this Count by these Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count VI.

**Count IV – 42 U.S.C. § 1983**
**Conspiracy to Deprive Constitutional Rights**

78.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

79.     Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and deprive him of his constitutional rights by maliciously causing Plaintiff's prosecution, by fabricating evidence that would be used to convict Plaintiff; and by withholding exculpatory information from Plaintiff's defense and the prosecution, as described above.

80.     In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

81.     In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

82.     The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

83.     As a result of Defendants' misconduct described in this count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

## Count V – 42 U.S.C. § 1983
## Failure to Intervene

84.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

85.     During the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

86.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's innocence.

87.     As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered loss of liberty, great emotional pain and suffering, and other grievous and continuing injuries and damages.

88.     The misconduct described in this Count by Defendant Officers was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count VI.

**Count VI – 42 U.S.C. § 1983**
**Municipal Liability**

89.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

90.     As described more fully herein, the City of Chicago is itself liable for the violation of Plaintiff's constitutional rights. Plaintiff's injuries were caused by the policies, practices, and customs of the Chicago Police Department, in that employees and agents of the Chicago Police Department, including Defendants in particular, regularly failed to disclose exculpatory evidence to criminal defendants, fabricated false evidence implicating criminal defendants in criminal conduct, pursued wrongful convictions through profoundly flawed investigations, and otherwise violated due process in a similar manner to that alleged herein.

91.     This institutional desire to close cases through abusive tactics regardless of actual guilt or innocence, to enhance police officers' personal standing in the Department, was known to the command personnel, who themselves participated in the practice.

92.     The above-described widespread practices, which were so well-settled as to constitute the de facto policy of the Chicago Police Department, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it. Furthermore, the above-described widespread practices were allowed to flourish because the Chicago Police Department declined to implement sufficient training or any legitimate mechanism for oversight or punishment of officers and agents who withheld material evidence, fabricated false evidence and witness testimony, and pursued wrongful convictions.

16

93. The constitutional violations described in this Complaint were also undertaken pursuant to the policy and practices of the Chicago Police Department in that the constitutional violations were committed with the knowledge or approval of persons with final policymaking authority for City of Chicago and the Chicago Police Department.

94. Chicago police officers who manufactured criminal cases against individuals such as Plaintiff had every reason to know that they not only enjoyed *de facto* immunity from criminal prosecution and/or Departmental discipline, but that they also stood to be rewarded for closing cases no matter the costs. In this way, this system proximately caused abuses, such as the misconduct at issue in this case.

95. The policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

## Count VII – State Law Claim
## Intentional Infliction of Emotional Distress

96. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

97. In the manner described more fully above, Defendants engaged in extreme and outrageous conduct.

98. The Defendants either intended that their conduct would cause severe emotional distress to Plaintiff or knew that there was a high probability that their conduct would cause severe emotional distress to Plaintiff.

99. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

100. As a proximate result of this misconduct, undertaken within the scope of Defendantsøemployment, Plaintiff suffered injuries, including but not limited to severe emotional

distress.

## Count VIII – State Law Claim
## Malicious Prosecution

101.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

102.     The individual Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued with malice and resulted in injury to Plaintiff. All such proceedings were ultimately terminated in Plaintiff's favor in a manner indicative of innocence.

103.     The Defendants accused Plaintiff of murder, knowing that he was innocent of the crime. All of the individual Defendants fabricated evidence, coerced and manipulated witnesses, and withheld material exculpatory evidence. The law enforcement officer Defendants knowingly made false statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings against Plaintiff.

104.     As described more completely above, Defendant Goldfish would not have prosecuted Plaintiff but for the involvement and encouragement of the Defendant Officers. Indeed, Defendant Goldfish would never have prosecuted the case without having at least one police officer available to document and testify to the version of events that led to the initiation of charges against Plaintiff.

105.     Defendant Goldfish needed the Defendant Officers to back up the fabricated charges against Plaintiff. Without the involvement, agreement, and falsifications of the Defendant Officers, Defendant Goldfish would never have initiated or continued the false charges against Plaintiff.

106.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

107.    As a direct and proximate result of this misconduct, undertaken within the scope of Defendants' employment, Plaintiff suffered injuries, including, but not limited to, emotional distress.

### Count IX – State Law Claim
### Respondeat Superior

108.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

109.    In committing the acts alleged in the preceding paragraphs, the Defendant Officers were members and agents of the Chicago Police Department acting at all relevant times within the scope of their employment.

110.    Defendant City of Chicago is liable as principal for all torts committed by its agents.

111.    In committing the acts alleged in the preceding paragraphs, Defendant Goldfish was a member of, and agent of, the Cook County State's Attorney's Office, acting at all relevant times within the scope of her employment and under color of law.

112.    Defendant Cook County is liable as principal for all torts committed by its agents.

### Count X – State Law Claim
### Civil Conspiracy

113.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

114.    As described more fully in the preceding paragraphs, each of the individual Defendants acting in concert with one another and other co-conspirators, known and unknown, conspired to accomplish an unlawful purpose by unlawful means.

115.    In furtherance of the conspiracy, the Defendants each committed overt acts and were otherwise willing participants in joint activity.

116.    The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

117.    As a direct and proximate result of this misconduct, Plaintiff suffered injuries, including, but not limited to, emotional distress.

**Count XI – State Law Claim**
**Indemnification**

118.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

119.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

120.    The Defendant Officers are, or were, employees of the Chicago Police Department who acted within the scope of their employment in committing the misconduct described above.

121.    The City is liable to indemnify any compensatory judgment awarded against the Defendant Officers.

122.    Defendant Cook County was, at all times material to this complaint, the employer of Defendant Goldfish, and is therefore responsible for any judgment entered against Defendant Goldfish during said employment with the County, making the County a necessary party to this complaint.

WHEREFORE, Plaintiff John Velez respectfully requests that this Court enter judgment in his favor and against Defendants, awarding compensatory damages, punitive damages, costs, and attorneys' fees, and interest, as well as any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff John Velez hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: December 11, 2018

RESPECTFULLY SUBMITTED:

s/ Ruth Brown
Attorney for John Velez

Arthur Loevy
Jon Loevy
Russell Ainsworth
Ruth Brown
Danielle Hamilton
LOEVY & LOEVY
311 North Aberdeen St., 3rd floor
Chicago, IL 60607
Phone: (312) 243-5900
Fax: (312) 243-5902

Jennifer Blagg
LAW OFFICE OF JENNIFER BLAGG
1333 West Devon Ave., Suite 267
Chicago, IL 60660
Phone: (773) 859-0081
Fax: (773) 439-2863