**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN VELEZ, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 8144 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**A.**

The plaintiff has filed a Motion to Compel Production of 1) complete files for all homicide investigations conducted by the Chicago Police Department through Area Four for homicides taking place between 1995-2001; and 2) Complaint Register ("CR") files for all officers assigned to Area Four in 1995-2001. The City has objected to the temporal breadth of the request. This present controversy dates back about twenty months, to September 2019, when the plaintiff first requested the documents. [Dkt. #172, at 3]. The City's responses were late, dated "November –, 2019." [Dkt. #172-2, Page 7/7]. And, there has been a good deal of disputation from both sides from the start.

We begin with the plaintiff's *initial* request. It wasn't just, as the time-worn objection would have it, "overly broad" – it was *staggeringly* overly broad. It sought homicide and CR files for a *29-year period*, from 1983 through 2011. [Dkt. #172-2, Page 3-4/7]. But "[p]arties are entitled to a reasonable opportunity to investigate the facts-and no more." *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. 1994)(Moran, J.). Apparently, the only thing reigning-in plaintiff's request was the fact that the maintenance and disclosure of such files began in 1983 with Special

Order 83-1 [Dkt. #172-2, Page 3-4/7], otherwise one can only imagine how far back the request might have gone. I am not aware of any case law – and plaintiff has not cited any – that would allow such a boundless request. Relevance counts.[1] What would make counsel think it was appropriate to request documents dating back 40 years is a mystery. The plaintiff's initial document request had no hope of being taken seriously, or enforced by the court; it served only to set the tone for the battle that followed. And it needlessly did so.

The City, curiously lodged only the usual, formulaic garden-variety, conclusory objections: overly broad, unduly burdensome, disproportionate to the needs of the case – even though boilerplate objections are ineffectual.[2] Here, however, those objections actually were well-taken. The request, as already noted, was obviously overly broad, obviously unduly burdensome, and obviously disproportionate to the needs of not only this case, but perhaps any similar case. Consequently, in this instance, no further amplification from the City was necessary. But, the City's attorneys were

---

[1] As the Supreme Court and the Seventh Circuit have cautioned that "[f]ailure to exercise [control over what is and is not relevant] results in needless and enormous costs to the litigants and to the due administration of justice." See cases collected in *Sapia v. Bd. of Educ. of the City of Chicago*, 2017 WL 2060344 at *2 (N.D. Ill. 2017). And they have emphasized that the core requirement of Rule 26(b)(1) that non-privileged material sought in discovery must be "relevant" should be firmly applied. *Herbert v. Lando,* 441 U.S. 153, 177 (1979). *Accord Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648-49 (10th Cir. 2008); *Gonzalez v. Nat'l Broadcasting Co., Inc.,* 155 F.3d 618, 626 (2nd Cir. 1998); *Jett v. Warrentech Corp.*, 2020 WL 3104673, *2 (S.D. Ill. 2020); *Gray v. Acadia Healthcare Co., Inc.*, 2020 WL 4876855, *2 (E.D. Ok. 2020); *PolyOne Corp. v. Lu*, 2017 WL 2653130, *1 (N.D. Ill. 2017).

[2] Despite courts' repeated admonitions that these sorts of "boilerplate" objections are ineffectual, *Joseph v. Harris Corp.,* 677 F.2d 985, 992 (3rd Cir.1983), their use continues unabated, with the consequent institutional burdens, *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir.1987); *Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 (7th Cir.1996), and the needless imposition of costs on the opposing party. They are "'tantamount to not making any objection at all.'" *E.E.O.C. v. Safeway Store, Inc.,* 2002 WL 31947153, *2–3 (N.D.Cal.2002). *See also In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994,* 172 F.R.D. 295 (N.D.Ill.1997) (rejecting generic, non-specific, boilerplate objections); *Klein v. AIG Trading Group Inc.,* 228 F.R.D. 418, 424 (D.Conn.2005) (overruling objections that "the familiar litany that the [requests] are burdensome, oppressive or overly broad").

determined to wrest the villain's cape from the plaintiff's law firm and announced that it simply would not be responding to such requests –even if pared down to the realm of rationality – during the pendency of its motion to bifurcate *Monell* discovery, and would revisit its stance once if the court allowed *Monell* discovery to proceed. [Dkt. #172-2, Page 3-4/7].

At some point, the plaintiff's counsel finally – if half-heartedly – following the commands of Local Rule 37.2, made a belated, good faith offer to pare down the requests to a 7-year period – essentially, what their original request ought to have been. [Dkt. #172-3, Page 1/26]. This came on November 13, 2020, so it took about a year for plaintiff's counsel to make a reasonable request. Plaintiff also offered to further limit the time frame if the City agreed to stipulate that the resulting production was a representative sample. [Dkt. #172-3, Page 1/26]. But that was an indirect way of getting what was asked for – improvidently – in the first place.

It should be pointed out that plaintiff wasted an incredible amount of time getting to a reasonable position, but it didn't matter one way or the other because the City refused to participate further in discovery or negotiations until the court ruled on its motion to bifurcate. Notably, the City did not move for a stay of discovery at that time, instead taking it upon itself to improperly institute a unilateral stay. [Dkt. #172-3, Page 3-6/26]. But, discovery was not stayed, and the City, like any other party, does not control the discovery schedules. The court does. *Lawrence v. United States*, 2021 WL 601718, at *1 (N.D. Ill. 2021); *see also BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 174 (N.D. Ill. 2018)("The parties do not "own" the discovery schedule, and cannot suspend or extend discovery in accordance with their own desires."); *Jones v. UPR Prod., Inc.*, 2016 WL 6518652, at *1 (N.D. Ill. 2016)("Lawyers and parties do not own the discovery schedule. There is an overriding public interest in the prompt resolution of legal disputes. That

interest transcends the immediate interest of the parties....").

Judge Chang denied the City's motion to bifurcate on November 30, 2020. [Dkt. #150; #172-3, Page 7/26]. The City filed a motion for reconsideration two weeks later on December 14th [Dkt. #155; #172-3, Page 12/26], and Judge Chang denied that on December 22nd. [Dkt. #157]. Twice turned aside and unable to point to any stay, the City changed course and demanded a detailed explanation of how the homicide and CR files were relevant to plaintiff's *Monell* theories. [Dkt. #172-3, Page 14-15/26]. Plaintiff responded on February 8, 2021, with a 7-page, single-spaced letter thoroughly setting forth its theory on the relevance of the files, supporting its contentions with facts and citations to case law, especially other cases where judges of this district had ruled that such files were indeed relevant to *Monell* claims of this nature. [Dkt. #172-3, Page 17-23/26]. Plaintiff asked to file a response in 7 days, by February 15th. But on that date, the City was late again, and said it would need a couple of more days. [Dkt. #172-3, Page 24/26]. The City finally responded on February 19th. At that point, the City had had over sixteen months to consider plaintiff's requests, so its response should have been rather well-thought-out, well-reasoned, and amply supported by case law. Unfortunately, it was not.

As for plaintiff's relevance arguments, the City merely said that it would "not concede that the production of Area 4 homicide files and CR files are relevant to the *Monell* claims asserted in this case," but cited no case law in support of that position. While it said that production of CRs for every Area 4 officer was disproportionate to the needs of the case, "unfortunately... saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010). The City cited no pertinent authority to support its *ipse dixit*. It did offer to produce homicide files and CRs for just a 3-year period around the incident, from 1998 to 2001, citing one case where it had

4

been ordered to produce 4 years' worth of files. [Dkt. #172-3, Page 25-26/26]. But it maintained its refusal to stipulate to the reduced sample size as being representative. [Dkt. ##172-3, Page 26/26].

With the City's "offer" of a reduced sample size made untenable by the prospect of the City arguing at trial that plaintiff did not have a sufficient sample size of files to make out its *Monell* claims, the plaintiff, of course, filed this motion to compel on March 10, 2021. [Dkt. #170].

**B.**

The court allowed the City sixteen days in which to respond to the discovery motion. [Dkt. #171]. While the motion was three pages longer than the usual fifteen pages, much of what was included was discussed in the plaintiff's lengthy, 7-page, single-spaced letter a month earlier. Consequently, little of it should have come as a surprise to the City, and the City ought to have been well-prepared to respond. However, on March 24th, two days before its brief was due, the City sought a 2-week extension, complaining that it had not had the opportunity to weigh in on the briefing schedule. [Dkt. #173, ¶. 2].[3] The City also explained that it had "been working with the Chicago Police Department to ascertain the burden of plaintiff's request amid the still ongoing public health emergency . . . ." [Dkt. #173, ¶. 3]. The requests at issue, however, date back to six months before the pandemic. Surely the City could have accomplished most of the task of "ascertain[ing] the burden" in all that time, and much work along those lines could have been done safely during the pandemic. Nevertheless, I granted the City's motion and set a new deadline – of the City's choosing – for April 9th. [Dkt. #174].

Still, the City could not meet the deadline it had selected. Despite its earlier protestations,

---

[3] Again, the City – or any other party – is not in charge of the court's discovery schedule. The City, like any other party, does not control the court's discovery schedules. *Lawrence*, 2021 WL 601718, at *1; *BankDirect*, 326 F.R.D. at 174; *UPR Prod.*, 2016 WL 6518652, at *1.

being in charge of the briefing schedule made no difference. At 2:40 p.m. on the afternoon it had represented it would be able to file its brief, it instead filed a motion for an additional extension of seven more days. [Dkt. #175]. In this new motion, the City misrepresented to the court that its previous motion for an extension had been unopposed. [Dkt. #175, ¶. 3]. That was false. [Dkt. #174-4]. The City explained its need for more additional time by saying that working remotely had caused communication issues through the various levels of review the City put its filings through. [Dkt. #175]. Ideally, remote or not, that review process would pick up misrepresentations or mistakes in an 8-sentence motion, but that was apparently not the case. The plaintiff, understandably, quickly filed an opposition to the City's request. [Dkt. # 176]. And, for reasons that ought to now be obvious, I denied the City's motion the morning of the following business day. [Dkt. #177]. Eleventh hour motions for extensions of deadlines are, at best, presumptuous. *See Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996)("When parties wait until the last minute to comply with a deadline, they are playing with fire."); *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 947 (7th Cir. 2020)(decrying last-minute requests for extensions); *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 2015 WL 8777633, at *2 (N.D. Ill. 2015). The eleventh-hours tactics the City employed presuppose that a Judge will simply do whatever it wishes. *G & G Closed Circuit Events, LLC v. Castillo*, 2016 WL 3551634, at *4 (N.D. Ill. 2016). Apparently having finished testing how far it could go in controlling the court's schedule and docket, just three hours later, the City filed their response brief a day after it had been due, asking that it be considered *nunc pro tunc* and asking for a relaxation of the page-limit as had been afforded the plaintiff. [Dkt. #178].

## C.

All that is the past, but it is prologue and goes into the ruling on the plaintiff's motion; from a preposterous 30-year request from the plaintiff, to the City's unilateral, extra-judicial stay of discovery, refusal to streamline matters through a stipulation, refusal to meaningfully respond to a 7-page letter during Rule 37.2 negotiations, and general foot-dragging and delay all the way up to the eleventh-hour filing of a second request for an extension of time to respond to the plaintiff's motion to compel. Rulings on these types of disputes are committed to the broad discretion of the court. *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016). That means there are no hard and fast rules. Indeed, two decision-makers—on virtually identical facts—can arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *See McCleskey v. Kemp*, 753 F.2d 877, 891 (11th Cir. 1985), *aff'd, McCleskey v. Kemp*, 481 U.S. 279, 289-290 (1987). *Accord Mejia v. Cook County, Ill.*, 650 F.3d 631, 635 (7th Cir. 2011). *Cf. United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006)(Posner, J.)("The striking of a balance of uncertainties can rarely be deemed unreasonable...."); *Elliot v. Mission Trust Services, LLC*, 2015 WL 1567901, 4 (N.D. Ill. 2015).

As a result, a party that obdurately maintains its position without budging could insist that it was "right," but find itself on the losing side when the matter comes before the court, and the court's vast discretion in overseeing discovery leads it to accept the other side's "right" position. Is a response adequate? One judge will say yes, another will say no. The losing party will have little practical recourse, *U.S. v. Re*, 401 F.3d 828, 832 (7th Cir. 2005); *Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F. Supp. 3d 1044, 1046 (N.D. Ill. 2018). Thus, it generally behooves parties to work out their issues with some give and take. There was a bit of that here, especially on the plaintiff's part, but not nearly enough.

**D.**

First, there is no question as to the relevance of the homicide and CR files, as the City's lack of response during Rule 37.2 proceedings indicates. *See, e.g., Prince v. Kato*, 2020 WL 1874099, at *2 (N.D. Ill. 2020); *DeLeon-Reyes v. Guevara*, 2019 WL 4278043, at *8 (N.D. Ill. 2019); *Solache v. City of Chicago*, 2019 WL 4278043 (N.D. Ill. 2019). The real question is how many. The plaintiff wants seven years of files; the City says three years is enough. The City, as already explained, might have gotten its wish if it had negotiated in good faith. It chose not to. But that being the case, the court's discretion should, other things being equal, err on the side of too many files rather than too few, in view of the City's potential strategy of challenging the eventual production as being too small of a sample size.

We need to point out here that the City's proportionality objection is all but a non-starter. Proportionality is assessed in terms of the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(1). Like other concepts, proportionality requires a common sense and experiential assessment. *See, e.g.*, discussion in *Bierk v. Tango Mobile, LLC*, 2021 WL 698479, at *1 (N.D. Ill. 2021); *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018) ("Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary indicates that the addition of proportionality to Rule 26(b) 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'").

There is no question that this case – which is about the unlawful incarceration of a young man and the loss of sixteen years of freedom – and all that entails – is about unimaginable and ineffably important issues. The amount in controversy is beyond substantial – and cannot measure the claimed loss. (If the allegations in the Complaint are found to be true). The importance of the discovery is significant, given the burden of establish a *Monell* claim. Is there a significant burden? Yes, but not an undue burden as the City would suggest – if not openly claims. But, as courts have made clear, the burden is part and parcel of *Monell* litigation. *See, generally, Prince v. Kato*, 2020 WL 74099, at *5 (N.D. Ill. 2020). On the other hand, plaintiff provides no support for requiring the seven years' worth of discovery it demands. Indeed, how can a court credit a parties' assessment of how much discovery it properly needs when its starting point – a point with no anchor in any case law – is three decades' worth of files. Thus, when the requestor then says it "only" needs seven years of files, a court is understandably chary of the request. Indeed, counsel should have known better from past experience in this regard. *See, e.g., Bouto v. Guevara*, 2020 WL 4437671, at *2 (N.D. Ill. 2020)(noting that where counsel has sought seven years' worth of homicide files and CRs, presiding judges have invariably whittled the time period down to four or five years). Five years' worth of production has become a sort of benchmark in these types of cases. *see, e.g, Bouto*, 2020 WL 4437671, at *3; *Prince*, 2020 WL 1874099, at *4; *DeLeon-Reyes v. Guevara*, 2019 WL 4278043, at *8 (N.D. Ill. 2019). Plaintiff's brief does not demonstrate why these cases are wrong or inapplicable here or point to any special additional need in this particular case. [Dkt. # 172, at 9].[4]

Along these same lines, plaintiff does nothing to indicate why CR files of *all* officers should

---

[4] One is left with the disquieting feeling that what was originally done here, asking for 29 years of materials, was nothing but a thinly veiled stratagem to ultimately get to where we are now.

be produced. Files limited to detectives and gang specialists will have to be adequate. Use of this extensive discovery the plaintiff is being allowed will be limited to that envisioned in the very cases plaintiff relies upon. *See Prince*, 2020 WL 1874099, at *4 ("To open up discovery on other homicides would not be consistent with ensuring a just, speedy, and inexpensive process. There are avenues to use these homicide files for *Monell* claims without this extensive discovery, including the use of expert witnesses to review the files and opine on practices in homicide investigations."); *Sierra v. Guevera*, 18 CV 3029 [Dkt.#176-6, at Page 2/4("Because the burden [of re-investigating homicide files] far outweighs the potential benefit of any discovery plaintiff might garner from re-investigating the crimes documented in the Area Five homicide files, the Court bars plaintiff from doing so.")].

That brings the parties to five years (1997-2001) of Area Four homicide files and five years (1997-2001) of CR files for detectives and gang specialists who worked at Area Four. That is the point counsel operating under Local Rule 37.2 hopefully should have reached some sixteen months ago. But, even so, the defendant expresses concern over the investigations that it believes plaintiff will undertake regarding the files; perhaps rightfully so, perhaps not. Judge Chang indicated that there might be some type of restrictions imposed on the production of files "the fabrication of evidence consist[ing] of pressuring eyewitnesses (like in this case) and . . . the withholding of exculpatory evidence was specific to alleged street files." [Dkt. #150]. But in the course of a year and a half, the parties have not agreed on a practicable way to effect such a limitation in the first instance across hundreds of files.

The City simply asks that production be limited to "files where the fabrication is alleged to be pressuring of witnesses, and the withholding is alleged to be related to witness identifications"

10

and that any collateral investigations be barred. [Dkt. #178-1, at 16-17]. One presumes the City thinks it will determine which files involve pressuring of witnesses and withholding of exculpatory evidence and produce those limited files only. But, that would be unacceptable to the plaintiff and essentially unworkable. The plaintiff offers a number of examples of occasions where these types of things were discernable from the files themselves. [Dkt. #172, at 10-14]. But, the plaintiff does not rule out collateral investigations or attempting to involve the City in them [Dkt. #184, at 12], likely at a significant cost to the parties and the tax payers.

The broad spectrum of decisions on discovery disputes like this is demonstrated by decisions in *Bouto* and *Sierra*. In *Bouto,* the court expressed confidence that the fact discovery deadline would eliminate the waste and inefficiency of multiple investigations into multiple files resulting in multiple discovery disputes:

> The Court fails to see how allowing the Plaintiff to interview hundreds of witnesses he gleans from the homicide files would burden the City at all. While the City seems to be concerned about whether such discovery could be adequately managed, that seems like a greater concern for Plaintiff than the City. The Court does not intend to grant endless extensions if the Plaintiff chooses to use his limited fact discovery time on a frolic and detour chasing every witness named in the homicide files. If Plaintiff wants to use his limited resources and time to do so, he is certainly allowed to, but it does not strike the Court as the most efficient plan. To the extent the City is worried about discovery being extended because Plaintiff files supplemental disclosures on the eve of the close of discovery that require additional investigation by the City, the City can move to strike any supplemental disclosure or affidavits if they are not disclosed in a timely manner and prejudice the City.

*Bouto*, 2020 WL 4437671, at *3. In *Sierra*, in an order Bouto referenced but declined to follow, the court had quite a different take:

> Once those files were produced, it would take plaintiff years to determine which cases to re-investigate, attempt to locate the relevant witnesses and police officers and interview or depose them, track down any defense files and obtain relevant hearing and trial transcripts for cases twenty to twenty-five years old.

> The information gathered through this proposed discovery would be compromised by the organic limitations of significantly elapsed time, failing memories, lost tangible items and witnesses, and the like. At the end of that process, plaintiff would supplement his Rule 26 disclosures with dozens of "witnesses" who plaintiff believes would support his Monell claim, and then the City would have to repeat the process to develop rebuttal evidence. And what would be the end result of this enormous investment of time and resources? The dubious recollections of witnesses to twenty-year-old events and the years-long postponement of plaintiff's day in court. Because the burden associated with this aspect of plaintiff's proposed discovery far outweighs the potential benefit of any discovery plaintiff might garner from re-investigating the crimes documented in the Area Five homicide files, the Court bars plaintiff from doing so.

*Sierra v. Guevara*, 18 cv 3029 ([Dkt. #154]).

Essentially, relying on *Bouto*, the plaintiff, seems to think the close of fact discovery on August 1, 2021 [Dkt. ##136, 143, 169], will provide an adequate curb on collateral investigations. Experience teaches that deadlines in litigation are rarely observed, and motions for extensions of discovery are likely the most common motion filed in the courthouse. But, given their reliance on *Bouto*, we will take plaintiff's counsel at their word. That date of August 1st may be extended for the purposes of collateral investigations, but only insofar as the time the City takes to produce the files might necessitate and extrapolation of that date, keeping in mind that August 1st date is only a few months away. Of course, given the City's baseline has always been the production of three years worth of files, it should be well along in the process. The August 1st date and the foregoing limitation of any extensions of it should discourage plaintiff from engaging in too much extraneous activity.

Accordingly, the defendant must produce five years (March 1996- March 2001) of Area Four homicide files and five years (March 1996-March 2001) of CR files for detectives and gang specialists who worked at Area 4. As neither side has indicated there is any practical way production

can be limited to files where "the fabrication of evidence consist[ing] of pressuring eyewitnesses (like in this case) and . . . the withholding of exculpatory evidence was specific to alleged street files", there will be no such limitation. The plaintiff may, of course, conduct whatever collateral investigation into those files it wishes; but the court will not extend the fact discovery in this case for those purposes beyond what is equitable given the time the City takes to produce the files, with the current August 1st deadline as a guide. Finally, as the City has failed to articulate why production should be limited to closed files [Dkt. #178-1, at 14], there will be no such limitation.

## CONCLUSION

In sum, the plaintiff's Motion [Dkt. #172] is granted in part and denied in part.

ENTERED:  _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/17/21