# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN VELEZ, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 8144 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On June 30, 2021, the plaintiff filed a motion for a rule to show cause why Micaela Gutierrez-Fuentes should not be held in contempt for failure to appear for her June 14, 2021 deposition. [Dkt. #194]. In response to a ruling of this court regarding the continued propriety of rules to show cause in light of Seventh Circuit holdings, [Dkt. #197], the plaintiff sought a motion for contempt against Micaela Gutierrez-Fuentes. [Dkt. #203]. The plaintiff ignored my Order instructing him to file a brief discussing whether a magistrate judge has contempt authority in a case like this under the circumstances presented. That was never done. Judge Chang, in light of that default, treated the motion as one to compel the witness's compliance with a subpoena, then referred that much of the motion to me. [Dkt. #214]. For the following reasons, and to the extent it is considered a motion to compel compliance with the subpoena, the plaintiff's motion [Dkt. ##203, 205] is denied.[1]

---

[1] The defendants have responded to the plaintiff's motion against Ms. Gutierrez-Fuentes, challenging service of the subpoena on her. [Dkt. #207]. "A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982). That has generally been interpreted to mean privacy interests or matters of evidentiary privilege. *PrimeSource Buildings Prod., Inc. v. Felten*, 2018 WL 10425599, at *2 (N.D. Ill. 2018); *HTG Cap. Partners, LLC v. Doe(s)*, 2015 WL 5611333, at *3 (N.D. Ill. 2015); *Parker v. Four*

The plaintiff's motion tells us that the plaintiff and the defendants both attempted to serve Ms. Gutierrez-Fuentes with deposition subpoenas back in August of 2020. Things did not go well from that point on. According to the plaintiff, the defendants challenged the plaintiff's service on Ms. Gutierrez-Fuentes back then, but apparently were able to effect proper service themselves, although there is no evidence of that one way or the other. But, plaintiff agreed to allow Ms. Gutierrez-Fuentes's deposition to proceed on the defendants' subpoena [Dkt. #205, par. 4], and at some point, the deposition was set for October 1, 2020. One of the plaintiff's six attorneys – Russell Ainsworth – emailed the defendants on September 23 indicating he was unable to attend due to child care issues, and sought October 5th or 6th as alternate dates. Defense counsel responded, saying the deposition would be cancelled for October 1st, and they would let plaintiff's counsel know if they could make the October 5th or 6th dates. Plaintiff's counsel then wrote back on October 3, saying: "Not having heard anything about rescheduling this deposition, I do not have it calendared for Monday. But please let me know if that is incorrect." Defendants' counsel then simply replied: "The deposition of Ms. Gutierrez will not proceed on Monday." [Dkt. #205-1].

And that was it. Apparently, neither side thought about deposing Ms. Gutierrez-Fuentes *for more than six months*, when plaintiff claims he resumed efforts to serve her. At one point in his

---

*Seasons Hotels, Ltd.*, 291 F.R.D. 181, 187 (N.D. Ill. 2013). Defendants have made no such showing here.

But, the court can certainly review the validity of a subpoena on its own, especially one targeting a non-party. "In keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that 'non-party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *United States ex rel. Tyson v. Amerigroup Illinois, Inc.*,, 2005 WL 3111972, at *4 (N.D. Ill. 2005). *See also Little v. JB Pritzker for Governor*, 2020 WL 1939358, at *2 (N.D. Ill. 2020); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013). "Non-parties are afforded this consideration because they have a different set of expectations than parties.... While parties to a lawsuit must accept the invasive nature of discovery, non-parties experience an unwanted burden." *HTG Capital Partners, LLC v. Doe(s)*, 2015 WL 5611333, at *3 (N.D. Ill. 2015).

2

motion plaintiff tells the court that Ms. Gutierrez-Fuentes "is a crucial witness to Plaintiff's case." With all due respect to the serious nature of this case, it certainly would not appear so to a neutral observer. One is reminded of Shakespeare's caution: "Defer no time delays have dangerous ends." Henry VI, Part I (1592) Act III, sc. ii 1.33. The Seventh Circuit has warned that ignoring deadlines is the surest way to lose a case. *United States v. Golden Elevator, Inc.,* 27 F.3d 301, 302 (7th Cir.1994). *See also Harris v. Owens-Corning Fiberglass Corp.,* 102 F.3d 1429, 1433 (7th Cir.1996). Even a day's delay can be fatal. *See, e.g., Brosted v. Unum Life Insurance Co. of America,* 421 F.3d 459 (7th Cir.2005); *Reales v. Consolidated Rail Corp.,* 84 F.3d 993, 996 (7th Cir.1996) Depositions of crucial witnesses aren't abandoned for *half a year*. The plaintiff is represented by *six* attorneys, two of whom are identified on the docket as lead attorneys. Does the scheduled deposition of a claimed "crucial" witness get scotched because one of the six has child care issues on that day? Couldn't one lead attorney and four other attorneys manage to handle the purportedly crucial deposition? And if the witness were so crucial, the rescheduling of the deposition would not have languished. Again, to a neutral observer, the way the plaintiff went about things suggests Ms. Gutierrez-Fuentes is anything but a crucial witness. Outside the world of litigation, at least, if something is crucial, people generally take care of it at the first opportunity.[2] There was an opportunity last October, and plaintiff's entire legal team just let it go and was not concerned in the slightest. Under any realistic appraisal of experience and common sense, which always have a role to play, *United States v. Montoya de Hernandez*, 473 U.S. 531, 542 (1985), the witness simply wasn't even that important, let alone crucial – regardless of what the lawyers now said.

---

[2] There is more than a bit of irony in the fact that six attorneys simply cancel an important deposition when just one among them can't make it, but they later seek to hold a non-party in "contempt" for failing to attend a deposition.

3

In any event, plaintiff's attorneys now claim that, when they finally got around to it, "on May 1, 2021, [their] investigator served a copy of the June 14, 2021 subpoena and witness fee upon Gutierrez-Fuentes for a June 14, 2021 deposition, at Gutierrez-Fuentes's residence" . . . on Sergio Garcia. [Dkt. # 205, Par. 7]. Plaintiff cites to, and attaches, to his motion a copy of a subpoena dated May 3, 2021, which demanded Ms. Gutierrez-Fuentes to appear for a deposition on June 14, 2021, at 10:00 a.m., at a court reporter's office in downtown Chicago. [Dkt. #205-2]. Plaintiff's motion tells us that Ms. Gutierrez-Fuentes lives in a two-story building about four miles from downtown. A photo attached to the motion indicates there are three units in that building – or, at least, shows that there are three mailboxes. [Dkt. #205-4]. A May 24, 2021 statement from plaintiff's investigator states that he received a subpoena to serve on Ms. Gutierrez-Fuentes on April 12, 2021 – obviously not the one dated May 3rd and copied and submitted in support of plaintiff's motion – and that on May 1, 2021, he served the subpoena for Ms. Gutierrez-Fuentes at that building on someone named Sergio Garcia. [Dkt. #205-6]. Again, that would not have been the one attached to plaintiff's motion which issued May 3rd. The investigator then states in his proof of service that Mr. Garcia was "an adult resident of [that building]" who "confirmed his knowledge of Ms. Gutierrez and that he would hand her the subpoena." Contrary to the plaintiff's assertion in his brief [Dkt. #205, Par. 7], the plaintiff's investigator indicates he tendered no witness fee. [Dkt. #205-7 (" . . . I have also tendered the witness fees for one day's attendance, and the mileage allowed by law, in the amount of $  0 .")].

So, there's some confusion between plaintiff's brief and plaintiff's exhibits in terms of dates. If the subpoena issued May 3rd as plaintiff claims, the investigator didn't get it on May 1st or serve it on May 1st. In order to compel someone to attend a deposition especially if she is a non-party,

4

things should be a little better organized. But, that confusion aside, pursuant to Fed.R.Civ.P. 45(b)(1), "[s]erving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." The proof of service clearly shows no fee for attendance or mileage and, so, service was ineffective. *See, e.g.*, *In re Dennis*, 330 F.3d 696, 705 (5th Cir. 2003)(court properly quashed a subpoena served with witness fee but no mileage allowance, even though mileage amount would have been de minimis. *See also Garcia v. Spokane Cty.*, 745 F. App'x 730, 731 (9th Cir. 2018)(court declined to enforce subpoena where, among other defects, party failed to properly pay the required fees); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013)(subpoena quashed where plaintiff failed to tender any witness fees or travel costs ); *ANGEL Learning, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, 2010 WL 11561734, at *2 (S.D. Ind. 2010)("A failure to 'simultaneous[ly]' tender the required fees with the subpoena 'invalidates' it."); *Andreola v. State of Wis.*, 2006 WL 897787, at *10 (E.D. Wis. 2006)("Effective service of a subpoena requires that the fees for one day's attendance and mileage allowed by law be tendered to the witness at the time of service. Failure to tender fees and mileage renders the subpoena invalid and frees the witness of any obligation to attend."); Wright & Miller, Federal Practice and Procedure: Civil 2d § 2454 at 25-26 (West 1995).[3]

---

[3] There may also be some issue as to whether giving the subpoena to Mr. Garcia counts as leaving it with an individual who "resides at the at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed.R.Civ.P. 5(b)(2)(B). Mr. Garcia apparently lives in the same multi-unit building, but not the same unit as Ms. Gutierrez-Fuentes. *Compare GGNSC Equity Holdings, LLC v. Breslin*, 2014 WL 5463856, at *2 (M.D. Pa. 2014)(service effective when process is left with person employed at the multi-unit building has authority, whether expressed or by customary practice, to receive correspondence on behalf of the tenants). Perhaps in the instance of a three-unit dwelling, this is close enough. But, the case plaintiff relies upon held only that leaving a subpoena in a mailbox was *not* proper service. *See Little*, 2020 WL 1939358, at *5.

Plaintiff's backup argument is that service was made by certified mail. The plaintiff tells us that he "also served a second copy of the Subpoena and witness fee on Gutierrez-Fuentes via certified mail at her confirmed address. Tracking information confirmed that the package was signed for on May 22, 2021, at 9:06am." [Dkt. #205, Par. 8]. Plaintiff explains that "[t]he person accepting service jokingly indicated their name was 'Covid-19,' but there is no dispute that the mailing was addressed to Ms. Gutierrez and signed for by a person at Ms. Gutierrez-Fuentes's address." [Dkt. #205, Par. 8 n.3]. But, the proof of service plaintiff provides, again, that no fee was tendered. [Dkt. #205-8 (" . . . I have also tendered the witness fees for one day's attendance, and the mileage allowed by law, in the amount of $ ___.")]. So, again, this was not a valid service.

Moreover, the signature of "Covid-19" was not a "joke" as the plaintiff states. The plaintiff's characterization is a product of failing to do the necessary preparation for presenting this matter to the court. A brief internet search of the terms "certified mail" and "Covid-19" would have apprised plaintiff of the fact that the signature was no "joke" and – again, despite plaintiff's assertion (or perhaps assumption is a better word), the mailing was not "signed for by a person at Ms. Gutierrez-Fuentes's address," but by the letter carrier. https://faq.usps.com/s/article/USPS-Coronavirus-Updates-for-Business-Customers#delivery ("In light of the exigent circumstances created by the Coronavirus pandemic, the Postal Service determined it was necessary to change the signature requirements associated with the delivery of accountable mail and packages in order to follow the guidance of the CDC on social distancing in order to reduce opportunities for possible transmission of COVID-19. It should be understood that our carriers are not signing for customers, but instead indicating that they have identified the customer to whom the item is being delivered."). A brief Westlaw search would have demonstrated the same thing. Because the plaintiff failed to

look into the facts, or perform a bit of legal research, he of course makes no argument that this might suffice under *Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir.2012), and it is inappropriate for a court to develop facts or legal arguments on behalf of one party in case, especially against a non-party. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel."); *United States v. Gustin*, 642 F.3d 573, 575 (7th Cir. 2011)(". . .it is not a judge's job to assist one advocate at another's expense.");*Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001)("If the district court, or later this court, searches the whole record, in practical effect, the court becomes the lawyer for the [one party], performing the lawyer's duty of setting forth specific facts . . . ."). Of course, under basic principles, the plaintiff's "argument" is waived. *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) ("We have repeatedly warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues.").

In closing, it must be said that both the briefing of this matter and parties' effective abandonment of the deposition that was scheduled many months ago suggest a lackadaisical attitude that is inappropriate everywhere and under all circumstances, but especially when seeking to hold a nonparty in contempt – one of the most serious punishments imaginable. *American Family Mutual Ins Co. v. Roth*, 2007 WL 2377335, *3-4 (N.D.Ill. 2007).

## CONCLUSION

It is well to recall Learned Hand's timeless admonition, "justice [after all] is not a game...." *United States v. Paglia*, 190 F.2d 445, 448 (2nd Cir. 1951). To the extent the plaintiff's motion is regarded as a motion to compel compliance with a subpoena, it is denied. [Dkt. #203, 205].

ENTERED:
UNITED STATES MAGISTRATE JUDGE

**DATE:** 7/13/21