IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN VELEZ, | ) |
| | ) |
| Plaintiff, | )  No. 18 C 8144 |
| | ) |
| v. | )  Magistrate Judge Jeffrey Cole |
| | ) |
| CITY OF CHICAGO, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This is another of the parties' long simmering discovery disputes that is here for resolution in the last couple of weeks before the discovery deadline. The plaintiff has filed a motion to quash a subpoena to the Illinois Department of Corrections from the defendants for production of 251[1] phone call recordings from the period between March 2013 and March 2014.[2] The calls were between the plaintiff and his wife, daughter, and brother. As a result of the contentious history of this case, the presentations in the briefs are at times exaggerated, or not entirely accurate, or are simply histrionic. As noted, the parties are divided on the question of something so basic as the number of phone calls they are arguing over. As a result, it is a bit difficult to nail down what exactly was requested and when, and what exactly the response was.

Apparently in response to a request from the City, IDOC, in November 2019, produced the log of plaintiff's phone calls while he was in custody. [Dkt. #222-1]. The City claims that "[p]laintiff

---

[1] The parties cannot agree on how many calls are involved. Defendants say 251; the plaintiff says 389.

[2] The period at issue appears to be dictated by the phone calls IDOC retained, which the parties suggest is limited to a single year – March 2013-14 – of plaintiff's incarceration. [Dkt. #211, at 13; #222, at 3].

was unwilling to provide sufficient responses to identify the callers and provided no information regarding the nature or scope of the calls." [Dkt. #222, at 3]. But plaintiff did manage to identify about two-thirds of the phone numbers – although not until two months later on January 13, 2020 [Dkt. #222-2] – so the City's characterization is a bit dramatic. Things continued to move slowly until the City requested recordings of calls between plaintiff and his family in June 2020. [Dkt. #211, at 4].

The City then says it served its first set of interrogatories six months later on plaintiff on July 15, 2020, "in an attempt to determine if plaintiff ever spoke over the phone with any witnesses in this case, and what some of the subject-matter of those discussions with witnesses might have included." [Dkt. #222, at 3]. Actually, the City asked the plaintiff to identify every single interaction he had over the course of 20 years "with any witness that [sic] testified at [his] criminal trial, any individual who provided an affidavit subsequent to [his] conviction for the Hueneca homicide, or any individual who testified at [his] sentencing hearing." [Dkt. #222-3. ¶. 6].[3] Of course, the

---

[3] In light of the nature of certain aspects of the presentations in this case, it is well to emphasize the Seventh Circuit's repeated admonitions to the bar that "'[j]udges are not like pigs, hunting for truffles buried in the record,'" *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 297 (7th Cir. 2018). Nor are they obliged "to play archaeologist with the record." *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 731 (7th Cir. 2014). These concerns, while not new, continue to be ignored. *See, e.g., United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir.1999). Here the defendants quote from plaintiff's responses to their interrogatories and cite, not a paragraph – they are numbered after all – nor a page, but the entire 23-page exhibit. [Dkt. #222, at 3]. Not to be outdone, although the plaintiff argues that the phone calls have no real relevance to his particular allegations or damages [Dkt. #211, at 8-9], plaintiff's only reference to those allegation is citation to his entire 32-page Complaint. [Dkt. #211, at 1].

The obvious point is that citations to entire, often lengthy, exhibits are hopelessly ineffective. Judges cannot be expected to scour long records in order to find something to support a point adverted to in a brief. Not only does a busy court not have the time to do the work the lawyers should have done in the first place, but there are other litigants and other cases that need the necessarily limited time that a court has to do its overall judicial work. *United States v. Sineneng-Smith*, ––– U.S. –––, 140 S.Ct. 1575, 1579 (2020). Also, a skeletal, non-directive presentation can suggest a certain disregard by counsel. But, it can also suggest that
(continued...)

plaintiff made the usual, ineffectual, "boilerplate" objections, and answered only that he spoke regularly to the mother of his child, and could not "tally up or identify" any others because they were "numerous." [Dkt. #222-3, ¶. 6]. Surely, though, from a roster too numerous to tally, it would have been easy to pick out more than one.

In any event, the stalemate continued, and so here we are.

To quash the subpoena and keep all these phone calls out of the case, the plaintiff makes three somewhat overlapping arguments – at least that is the way plaintiff presents them: any relevance is speculative; the breadth of the request is out of proportion with the needs of the case; and compliance with the request would violate his privacy interests. [Dkt. #211]. First, I do not agree with the relevance argument. The relevance standard is extremely broad as every court in the Nation has emphasized; *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009). Fed.R.Civ.P. 26 allows for discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."

Here, the phone calls with plaintiff's family are relevant. Further discovery by the

---

³(...continued)
the point being argued is not really sustained, or counsel would have taken the time to point the court specifically to the section of the record that supports the point being argued. Beyond this, it must not be forgotten that judges should not do the work of lawyers. Indeed, they are prohibited from doing so as every court in the Nation has held. *See, e.g., Castelino v. Rose-Hulman Inst. of Tech.*, _F.3d_, 2021 WL 2250893, at *8–9 (7th Cir. 2021); *Bunn v. FDIC*, 908 F.3d 290, 297 (7th Cir. 2018); *United States v. Gustin*, 642 F.3d 573, 575 (7th Cir. 2011); *Sednay Internat'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834 842 (7th Cir. 2010); *Hartman v. Prudential Ins. Co. of America*, 9 F.3d 1207, 1214 (7th Cir. 1993).

Here, the defendants quote from plaintiff's responses to their interrogatories and cite not a paragraph – they are numbered after all – nor a page, but the entire 23-page exhibit. [Dkt. #222, at 3]. Not to be outdone, although the plaintiff argues that the phone calls have no real relevance to his particular allegations or damages [Dkt. #211, at 8-9], plaintiff's only reference to those allegations is citation to his entire 32-page Complaint. [Dkt. #211, at 1].

defendants into phone calls during the period at issue revealed that plaintiff was orchestrating efforts to get other witnesses to swear out – and how to phrase – affidavits in his behalf. Plaintiff's wife at the time – as opposed to the mother of his daughter mentioned earlier – was acting as investigator and go- between for plaintiff and another witness, in this case, Mr. Pelmer. Even plaintiff's daughter spoke with him about the murder. Defendants also learned of another witness, whom plaintiff had not disclosed – who was on many phone calls plaintiff had indicated were to yet another witness. [Dkt. # 222, at 1-4].

Other phone calls certainly bear on the plaintiff's relationships with his wife, the mother of his daughter, and his daughter. They arguably suggest that a number of things were strained rather than uniformly intimate and affectionate as plaintiff has contended. [Dkt. #222, at 1-4]. One such call indicates plaintiff's daughter did not wish to talk to him – he was bothering her. [Dkt. 222, at – and her mother told the plaintiff: "If something ever does happen to me she [daughter] knows the truth and I will make sure my real statement gets in. So last warning, don't f[...] with me." [Dkt. #222-4]. The defendants have made a far more convincing showing on relevance than was made in cases like *Bishop v. White*, 2020 WL 6149567, at *4 (N.D. Ill. 2020)("the sole basis for Defendants' subpoena is what . . . an admitted liar who has told at least four stories about matters relevant to this case" has said); and *Pursley v. City of Rockford*, 2020 WL 1433827, at *4 (N.D. Ill. 2020)("Defendants merely allege that . . . Plaintiff likely discussed his criminal case and post-conviction proceedings while incarcerated.").

So, clearly, the calls are relevant – not merely speculative – as plaintiff would have it – to the issue of damages and beyond that. Is it likely that some were proved to be of no consequence? As in every case that buffets through discovery, the answer is, "of course." Discovery is not a

4

guarantee of success; it is not a matter of mathematics and equations in which certainty and exactness play central roles. It is, by its very nature, an enterprise with uncertain results and no assurance of ultimate success. Thus, because the information that is sought satisfies, in the abstract, the general requirement that the information sought be "relevant" – and proportional – does not ensure that the results of any given inquiry will yield usable information. *Boy Racer, Inc. v. Does, 1, 2, 3,* 2011 WL 7402999 (N.D.Cal. 2011). The inescapable fact is that litigants often come away "'empty handed' from discovery." *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 900 (9th Cir. 2021). But the indisputable reality as common sense dictates is that one can't know which specific items sought will turn out to be significant until they all are produced and reviewed. Or, as the Seventh Circuit has phrased it: "'one can't know what one has caught until one fishes.'" *Nw. Mem'l Hosp.*, 362 F.3d 923, 931 (7th Cir. 2004). *See also Coleman v. City of Peoria*, 2016 WL 3974005, at *4 (C.D. Ill. 2016)("The recorded calls contain the most accurate information available about the content of those calls. The relevant calls cannot be identified without listening to the recordings.").[4] Obviously, plaintiff's legal team would rather do that reviewing, but one doesn't put the fox in charge of inspecting the hens in the henhouse. Indeed, as for plaintiff's offer of allowing the City to select search terms, appropriate search terms would be difficult to come up

---

[4] In *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) the court said: "No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Accord* 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2206 at 380 (2nd ed. 1994). *See generally,* Elizabeth Thornburg, *Just Say "No Fishing": The Lure of Metaphor*, 40 Univ. of Michigan Journal of Law Reform 1 (2006); Jonathan Redgrave, *The Information Age, Part I: Fishing in the Ocean, A Critical Examination of Discovery*, 2 SEDCJ 198, *et seq.* (2001).

This does not mean that so-called limitless, exploratory "fishing expeditions" in discovery are permissible. They are not. *Equal Employment Opportunity Comm'n v. Union Pac. R.R. Co.*, 867 F.3d 843, 852 (7th Cir. 2017); *Higgason v. Hanks*, 54 F. App'x 448, 450 (7th Cir. 2002).

with prior to any review.

While the request is arguably broad, it is not nearly as broad as the requests in the cases plaintiff relies upon. *See, e.g., Simon v. Northwestern University*, 2017 WL 66818, at *4 (N.D. Ill. 2017) (seeking all calls placed over a fifteen-year period) and *Bishop v. White*, 2020 WL 6149567, at *3 (N.D. Ill. 2020) (subpoena encompassed 8,000 telephone calls over a four-year period); *see also Ezell v. City of Chicago*, 2020 WL 9259071, at *1 (N.D. Ill. 2020)(quashing subpoena for all calls during lengthy incarceration); *Pursley v. City of Rockford*, 2020 WL 4815946, at *1 (N.D. Ill. 2020)(quashing subpoena covering seven years and 3,000 calls). Moreover, the "proportionality" argument rings a bit hollow coming from the plaintiff, who throughout this litigation has stressed the extreme importance of the issues at stake. But the issues that underlie what is claimed to have occurred are significant to the defendants as well as to the plaintiff, and they have advanced a very different version of events than has plaintiff.

Further, plaintiff has filed a motion complaining that the defendant is late completing compelled production of perhaps 350 to 400 homicide *files,* totaling perhaps 100,000 pages, judging by the City's reported production thus far. [Dkt. #213, # 221]. If the case merits discovery and production of about 100,000 pages of files from the City, surely it is worth discovery relating to some 200 hundred phone calls from the plaintiff. Indeed, the stakes for all the parties in this case could not be of greater significance than those involved here, and discovery is never a one-way street, the outcome of which must favor one or the other of the litigants.[5]

---

[5] Proportionality is invoked by the plaintiff. But proportionality is anything but a simple concept with easy, formulaic answers. Proportionality is dependent upon a careful assessment of the facts unique to each case. *See* the informative discussions in Linda Simard, *Seeking Proportional Discovery: The Beginning of the End of Procedural Uniformity in Civil Rules*, 71 Vanderbilt L.Rev. 1919 (2018); Matthew T. Ciulla , *A Disproportionate Response? The 2015 Proportionality Amendments to Federal Rules of Civil Procedure*
(continued...)

Similarly, there are the plaintiff's protests of intrusion into his privacy. But as case after case holds, the mere invocation of the right of privacy is never the end of analysis, requiring a predetermined outcome in favor of the party asserting the claimed privacy interest. As the plaintiff must concede, he knew (or should have known) his phone calls were being monitored or recorded. So, his claimed privacy interest is not only greatly minimized, *Rodriguez v. City of Chicago*, 2021 WL 2206164, at *2 (N.D. Ill. 2021), but must be assessed in the context in which the claimed right is being assessed. Rights do not exist and cannot be measured in the abstract, and "[g]eneral propositions do not decide concrete cases." *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting). *See also Daubert v. Merrell Dow*, 509 U.S. 579, 598 (1993)(Rehnquist, C.J., concurring in part and dissenting in part)("'general observations'" suffer from the common flaw that they are not applied to the specific matter and "therefore they tend to be not only general, but vague and abstract."); *Barnhart v. Thomas,* 540 U.S. 20, 29 (2003)("To generalize is to be imprecise. Virtually *every* legal (or other) rule has imperfect applications in particular circumstances.").

Thus, not surprisingly, courts have rejected claims of privilege on the basis that there is no expectation of privacy in prison phone calls. *See, e.g., United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998); *Bishop v. White*, 2020 WL 6149567, at *9 (N.D. Ill. 2020); *Pursley v. City of Rockford*, 2020 WL 1433827, at *5 (N.D. Ill. 2020). But plaintiff makes what some courts have

---

⁵(...continued)
*26(B),* 92 Notre Dame L.Rev. 1395 (2016); Bernadette B. Genetin*, "Just a Bit Outside!": Proportionality and Federal Discovery and the Institutional Capacity of the Federal Courts*, 34 Review of Litigation 655 (2015). In this case, the interests that are at stake on both sides could not be more critical, and it would lead to inexact analysis to give preference to the interests only of the plaintiff and disregard the interests of the defendants – to say nothing of the public's overriding interest in the truthful and accurate outcome of the trial that is to come. *See Kansas v. Cheever*, 571 U.S. 87, 94 (2013); *Darden v. Wainwright*, 477 U.S. 168, 194 (1986)("The 'solemn purpose of endeavoring to ascertain the truth ... is the *sine qua non* of a fair trial.'")*.*

found to be a valid point, and it is somewhat attractive, at least on the surface: "while [plaintiff] knew that his call recordings might be reviewed for a limited correctional purpose, he never could have imagined that every single one of his retained conversations with his minor daughter, wife, and brother would be indiscriminately produced en masse to be combed through by adverse parties in civil litigation." [Dkt. #211, at 9]. But, the few courts that have accepted this premise did not go beyond the plaintiff's bald assertion, and given the circumstances here, accepting that same assertion seems naive. In any event, the worth of a judicial opinion depends on its reasoning, not on its conclusion. *Sandifer v. U.S. Steel Corp.*, 678 F.3d 590 (7th Cir. 2012); *E.E.O.C. v. United Airlines,* 693 F.3d 760, 764-65 (7th Cir. 2012); *United States v. Navarette*, 7 F.3d 238 (7th Cir. 1993); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

The plaintiff says he "[n]ever g[ave] up on proving his innocence" and "worked tirelessly to show that he had absolutely nothing to do with this crime." [Dkt. #96, Pars. 5, 73]. His investigation began years ago, paying off, as he says, in 2016. [Dkt. # 96, Pars. 6, 74]. While plaintiff worked without a lawyer early on, he was represented by one of the attorneys representing him here as things developed, and an amended post-conviction petition was filed, which eventually led to the State's decision to vacate his conviction in December 2017. [Dkt. # 96, ¶. 5, 74]; https://www.law.umich.edu/special/exoneration/pages/casedetail.aspx?caseid=5250. So, not only is it clear from the content of some of the calls that litigation was in mind in 2013-14, it is likely that it was based on the timeline. Plaintiff may have even been represented by counsel by the time. This is a far cry from cases where the plaintiff was supposedly surprised to be involved in litigation years later.

8

Moreover, unlike the cases he relies upon, plaintiff has made no specific showing whatsoever as to what he asserts is the "intimacy" or "sensitivity" of the phone calls at issue. For example, in support of his vague claim that these phone calls covered intimate and personal topics that have nothing to do with this case, plaintiff cites *Bishop.* [Dkt. #211, at 10]. But as plaintiff, himself, points out in his brief, the prisoner in *Bishop* showed that his phone calls covered intimate and sensitive subjects, including conversations with his wife about her battle with cancer, conversations with others in regard to his wife's subsequent death, conversations about his son's heart attack and his grandmother's death. *Bishop*, 2020 WL 6149567, at *4. There is nothing remotely like any of that from the plaintiff. And it cannot too often be repeated or too strongly emphasized that "saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010). *Accord Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018); *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 770 (7th Cir. 2020); *Donald J. Trump for President, Inc. v. Secy of Pennsylvania*, 830 F. Appx 377, 381 (3d Cir. 2020)("But calling an election unfair does not make it so. Charges require...proof. We have neither here."). Even the Solicitor General's unsupported assertions are not enough. *Digital Realty Trust, Inc. v. Somers*, _U.S._, 138 S.Ct. 767, 779 (2018).

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to quash [Dkt. ##209, 211] is denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 7/29/21

9