IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN VELEZ, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 8144 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Unfortunately, the discovery conflicts in this case continue. Now brought into the fray is the Cook County Public Defender's office ("CCPD"), which, on August 15, 2021, filed a motion to quash a subpoena plaintiff served on July 19, 2021. The subpoena demanded so many files that plaintiff's counsel was unable to provide an accurate count for a month after serving the subpoena. [Dkt. #254-3]. It now appears to be in the neighborhood of 575. Obviously, and quite properly, a non-party to litigation has a very different set of expectations than does a party. *See, e.g. Virginia Dept. Of Corrections v. Jordan,* 921 F.3d 180, 189 (4th Cir. 2019); *Roberts v. County of Riverside,* 2020 WL 5913852 at *3 (C.D.Cal. 2020); *Uppal v. Rosalind Franklin Univ. Of Medicine and Science,* 124 F.Supp.3d 811, 813 (N.D.Ill. 2005); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir.1998). Thus, concern for the unwanted burdens thrust upon non-parties is a critical factor entitled to special weight in evaluating the balance of competing needs. *Id. See also Little v. JB Pritzker for Governor*, 2020 WL 1939358, at *2 (N.D. Ill. 2020). Accordingly, a court must be particularly sensitive when weighing the probative value of the information sought against the burden of production on the non-party. *See id.; HTG Capital Partners, LLC v. Doe(s)*, 2015 WL

5611333, at *3 (N.D. Ill. 2015). Finally, given the pressures imposed on an already over-taxed staff dealing with many other subpoenas and the continuing hardships imposed by the world wide pandemic, the burdens involved in discovery are beyond question. Indeed, it is not at all a stretch to call it unduly burdensome. And that is the very understandable objection CCPD makes in asking that the subpoena be quashed.

But, as obvious as the burden is, it is equally obvious that the subpoena ought not simply be quashed as CCPD's motion asks. *Monell* discovery in this case has always been headed toward CCPD's doorstep. The parties' efforts, their pitched battles, and the significant expenditure of judicial resources – with the undeniable cost to the public, *see* Levin and Colliers, Containing the Cost of Litigation, 37 Rutgers L.Rev. 219, 226–27 (1985),[1] – will all have been for naught if the CCPD got what it says it wants in its motion. That is not acceptable. CCPD might have fared much better had it offered some practical suggestions rather than its all-or-nothing motion to quash. But, it did not and its motion [Dkt. #246] clearly must be denied.

The discovery sought by the subpoena is indisputably relevant to plaintiff's claims, and CCPD does not argue otherwise. Instead, CCPD claims the burden of production outweighs any benefit that plaintiff might gain from the materials. "In evaluating whether a subpoena imposes an undue burden, the Court considers whether the 'burden of compliance with it would exceed the benefit of production of the material sought." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004). That is, at best, a difficult argument to sustain. The plaintiff is trying to make out a *Monell* claim against the City involving the alleged widespread practice of failing to produce

---

[1] The Levin and Colliers study is thirty six years old. At the time of its publication the estimated cost to the government was $600 per hour for the time spent by a federal judge. The cost is obviously greater today.

exculpatory evidence to defense counsel. So, the plaintiff has to compare the contents of the homicide files the City has produced in discovery to the contents of the criminal defense attorneys' files in the same cases. If there is a better or more efficient way to see whether evidence was withheld, CCPD has not suggested it.

But, CCPD points out the volume of files is massive, more so than those involved in other cases in which the office has had to respond – or is in the process of responding – to subpoenas. It is idle to suggest that production of those files would not be extremely burdensome. But, the volume of files is the result of a limitation of production of files to a five-year period, which is, essentially standard in these cases. The City has still not completed production of those materials, and it is likely not all of the files from that period will be found, the number may be somewhat reduced. Unfortunately, it cannot really be pared down significantly because the sample size has to remain above a certain level to be statistically significant. So, CCPD's burden cannot be alleviated in that manner, unless the City is willing to stipulate to a smaller sample size – something it has refused to do thus far. Obviously, the City has the same right to put up a defense as the plaintiff does to support his claims, but the City's choice of strategy would seem to preclude any further reduction of CCPD's burden. It would seem that CCPD's objections, then, ought to be with the City and not the plaintiff.

CCPD does have options. In a case with a history of the parties exchanging ultimatums and obdurate refusals rather than engaging in meaningful, "good faith" negotiations, the plaintiff has made significant offers of assistance to CCPD. Plaintiff offered to provide additional information regarding names of defendants, case numbers, and charges to help CCPD determine for which homicides CCPD has responsive files; to make staff available to help pull boxes from the warehouse;

3

copy and scan the files at no cost to CCPD; to hire contract attorneys to conduct a privilege review for CCPD; and to forego demanding a privilege log following that review. Those accommodations could significantly reduce the burden of production – in terms of not only cost, but assignment of staff – assuming, of course, they are not just "window-dressing" for the court.

Plaintiff will have to supply the vast majority of staff needed to complete what will be an Herculean task. If significant and made in good faith, such accommodations all serve as the required "reasonable steps" a party issuing a subpoena must take "to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). *See DeLeon-Reyes v. Guevara*, 2021 WL 3418856, at *4 (N.D. Ill. 2021); *Delta Air Lines, Inc. v. Lightstone Grp., LLC*, 2021 WL 2117247, at *2 (S.D.N.Y. 2021)("Cost shifting may be appropriate in the context of Rule 45 subpoenas, . . . ."). But, CCPD has refused any of the assistance offered and has not explained why any further in its reply brief. That, of course, is CCPD's prerogative, but the choice it has made cancels out its burden arguments and with them, its motion to quash. So, the subpoena ought not be quashed.

Ideally, the parties – plaintiff, the City, and the CCPD – ought to meaningfully discuss and agree to a process and a file volume that would make all this workable. But, given the history of discussions under Local Rule 37.2 in this case, there would seem to be little hope of agreement and of the genuine cooperation between counsel demanded by case after case throughout the country. *Mommaerts v. Hartford Life & Accident Ins. Co.*, 472 F.3d 967, 968 (7th Cir. 2007); *Marcangelo v. Boardwalk Regency*, 47 F.3d 88, 90 (3rd Cir. 1995); *Landerman v. Tarpon Operating and Development, L.L.C.*, 2014 WL 6332824, 2 (E.D.La. 2014). But, perhaps the parties and counsel will acknowledge (at least to themselves) that the time for posturing and obduracy has come to a close.

What would be far better at this point than another jejune, disputatious discovery motion and response would be some actual solutions to the problems this case poses – problems that are persistent and require the sensitive and creative input of counsel on both sides. I am not insensitive to the concerns expressed by the parties in this case and of the objections posed by the CCPD. Indeed I have spent a very substantial amount of time attempting to resolve issues the parties have brought to the court. *See, e.g.,* [Dkt. ## 151, 153, 156, 159, 162, 170, 172, 173, 178, 183, 184, 187, 194/196, 195, 200, 203, 204, 207, 209/211, 210, 212, 213, 221, 222, 224, 225, 230, 234]; *Velez v. City of Chicago, et al.*, 2021 WL 3709187, at *2 (N.D. Ill. 2021); *Velez v. City of Chicago*, 2021 WL 3231726, at *1 (N.D. Ill. 2021); *Velez v. City of Chicago*, 2021 WL 3109657 (N.D. Ill. 2021); *Velez v. City of Chicago*, 2021 WL 2942047 (N.D. Ill. 2021); *Velez v. City of Chicago*, 2021 WL 2915117 (N.D. Ill. 2021); *Velez v. City of Chicago*, 2021 WL 1998448 (N.D. Ill. 2021); *Velez v. City of Chicago*, 2021 WL 1978364 (N.D. Ill. 2021); *Velez v. City of Chicago*, 2021 WL 309028 (N.D. Ill. 2021). Counsel are again encouraged to review their discovery concerns in a professional manner and to arrive at viable solutions to their issues. It ought not be forgotten that there are other cases besides this on the court's docket which are, after all, as important to those involved in them as this case is to the parties and their counsel.

But, in any event, the motion to quash [Dkt. #246] is denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 9/2/21

6