**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| John Velez, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| City of Chicago; Chicago Police Officers ) | Case No. 18-cv-8144 |
| Michael R. Bocardo, Michael Dyra, John A. ) | |
| Cruz, Sam Cirone, Patrick O'Donovan, ) | Honorable Edmond E. Chang |
| Kriston Kato, Bradul A. Ortiz, Michael J. ) | |
| Walsh, Victor M. Perez, D. Wolverton ) | Magistrate Judge Jeffrey Cole |
| (#20014), J. Botwinski (#20392), A. ) | |
| Jaglowski (#20196), Sgt. D. Walsh, John ) | |
| Farrell, and Unknown Officers; Cook County ) | |
| Sheriff's Department Detectives James Davis ) | |
| and John Sullivan and Unknown Sheriff's ) | |
| Department Officers; Cook County Assistant ) | |
| State's Attorney Megan Goldish; and Cook ) | |
| County, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MEGAN GOLDISH'S**
**MOTION FOR SUMMARY JUDGEMENT**

Defendant Former Assistant State's Attorney ("ASA") Megan Goldish ("Goldish"), by and through her attorneys Kenneth Battle, Michele Braun, and Alexis Carr of O'Connor & Battle, LLP, pursuant to Federal Rules Of Civil Procedure 56, hereby moves for Summary Judgement as to Counts I, IV, V, VII, and X of Plaintiff John Velez's ("Plaintiff) Second Amended Complaint. In support of the motion, Defendant Goldish's memorandum states the following:

## I.    INTRODUCTION

This action relates to the death of Anthony Hueneca. On March 25, 2001, Defendant Chicago Officers took Plaintiff into custody. On March 26, 2001, and March 27, 2001, Defendant Goldish reviewed reports related to witnesses and identifications of Plaintiff, memorialized witness

statements, and concluded under the supervision of a superior that there was enough evidence to recommend charging Plaintiff with the murder of Anthony Hueneca. Plaintiff was subsequently indicted by a grand jury and then convicted of the murder of Anthony Hueneca on October 15, 2002, following a jury trial. One of the witnesses later recanted and Plaintiff was released from prison on December 11, 2017.

On January 12, 2020, Plaintiff filed the instant Second Amended Complaint against Goldish, fourteen City of Chicago police officers, two Cook County Sheriff's detectives, Sheriff Thomas Dart, Cook County, and the City of Chicago. Plaintiff alleges that Defendant Goldish, in concert with the Defendant Officers, conspired to falsify evidence against him.

With respect to Defendant Goldish, Plaintiff asserts five claims, Count I under 19 U.S.C. § 1983 - Fabrication of Evidence, Count IV under 19 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights, Count V under 19 U.S.C. § 1983 – Failure to Intervene, Count VII- under Illinois law - Intentional Infliction of Emotional Distress ("IIED"), and Count X under Illinois Law – Civil Conspiracy. Defendant Goldish should be dismissed from suit because the record shows that there are no genuine issues of material fact which support Plaintiff's claims.

## II. STATEMENT OF FACTS

On March 26, 2001, around 11:00 pm Goldish was notified that detectives needed a Felony Review ASA dispatched to Area 4 to review a case and make a charging decision related to the Anthony Hueneca murder investigation. SOF ¶¶ 4 – 5. After Goldish's arrival at Area 4 she spoke to police personnel, and read officers' reports prior to interviewing witnesses. SOF ¶¶ 6. From the reports and/or speaking to police personnel, Goldish learned that, on March 19, 2001, Anthony Hueneca was shot and killed at 2143 S. Marshall Blvd. Chicago, Illinois. SOF ¶7. Goldish also learned that, on the night of March 19, 2001, four friends, Lorena Ricardo, Micaela Gutierrez,

Apolinar Mejia, and Gustavo Rivera were leaving La Terreza, a night club. SOF ¶ 8. Goldish further learned that after the four friends left the night club they made a stop, allowing Gustavo Rivera to exit the vehicle at or about 2143 S. Marshall Blvd. Chicago, Illinois. SOF ¶ 9. Goldish learned from reports that the three remaining friends in the vehicle, Lorena Ricardo, Micaela Gutierrez, and Apolinar Mejia, saw a man brandish a gun and then heard gun fire. SOF ¶ 10. Goldish also learned that the last remaining friend, Gustavo Rivera, witnessed the man shoot a gun while he was in a building at or about 2143 S. Marshall Blvd. Chicago, Illinois. SOF ¶ 11. Goldish then learned that on March 20, 2001, Lorena Ricardo, Micaela Gutierrez, and Apolinar Mejia, were questioned by detectives, shown photos and all identified Plaintiff as the subject brandishing a gun on March 19, 2001, while they were in a car. SOF ¶ 14. Goldish learned that on March 20, 2001, Gustavo Rivera also identified Plaintiff as the perpetrator he saw on March 19, 2001, shoot Anthony Hueneca. SOF ¶ 15.

Goldish also learned that Cristina Izquierdo, went to a cemetery on March 21, 2001, where gunfire erupted, injuring Cristina Izquierdo who was pregnant with Plaintiff's child. SOF ¶¶ 16 – 17. Goldish learned that Plaintiff visited Cristina Izquierdo in the hospital and stated he felt sorry that she was shot and injured. SOF ¶ 18. Goldish also learned that Chicago Police officers arrested Plaintiff for the murder of Anthony Hueneca on March 25, 2001. SOF ¶ 19. Goldish, after speaking to police personnel, learned that prior to her arrival at Area 4, officers placed Plaintiff in a line up and Lorena Ricardo, Micaela Gutierrez, Apolinar Mejia, and Gustavo Rivera again identified Plaintiff as the shooter. SOF ¶¶ 20 – 21.

Goldish spoke to Lorena Ricardo, Micaela Gutierrez, Apolinar Mejia, Gustavo Rivera, and Cristina Izquierdo. SOF ¶¶ 22, 23, 26 – 48. Goldish had a brief exchange with the Plaintiff where he stated that he had a lawyer and Goldish ended the conversation. SOF ¶ 24. During Goldish's

interviews with Lorena Ricardo, Micaela Gutierrez, Apolinar Mejia, and Gustavo Rivera, all identified Plaintiff as the shooter again and none of them complained of poor interactions with any police personnel. SOF ¶¶ 26 – 44. Goldish also interviewed Cristina Izquierdo, who signed a sworn statement, and did not tell Goldish about any poor interactions with any police personnel. SOF ¶¶ 45 – 48. After reviewing evidence, interviewing witnesses, and memorializing witness statements, Goldish spoke to her supervisor Tisa Morris who recommended murder charges against Plaintiff for the murder of Anthony Hueneca. SOF ¶¶ 49 – 50.

## III.     STANDARD OF REVIEW

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). One of the principle purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex*, 477 U.S. at 323-24. This is done by pointing out an absence of evidence to support the non-moving party's case. *Id.* at 325. This does not mean there cannot be any dispute over any fact, only those that are material to the pending claims. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-48 (1986); *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001).

Once a request is made, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial" by referring to the record. *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 952 (7th Cir. 2000). These must be actual facts and more than just collective hunches, speculation, conjecture, and rumor. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008); *Anderson*, 477 U.S. at 248-49 (mere allegations and denials are insufficient to ward off summary judgment). In other words, summary judgment is the "put up or shut up" time where the non-moving party must show the evidence it has that would convince a trier of fact to accept its version of events. *Springer*, 518 F.3d at 484; *Steen v. Myers*, 486 F.3d

4

1017, 1022 (7th Cir. 2007).

## IV.   <u>ARGUMENT</u>

Defendant Goldish should be dismissed from suit for five reasons. First, absolute immunity should apply because witnesses testified that Goldish only engaged in prosecutorial conduct after the police presented evidence and witnesses to her for a recommendation of murder charges. Furthermore, if absolute immunity does not apply, Goldish is entitled to qualified immunity because she did not violate any of Plaintiff's clearly established constitutional rights. Second, no facts show that Goldish fabricated any evidence in this case. Third, no facts show Goldish failed to intervene in any of the activity alleged by Plaintiff. Fourth, no facts show Goldish engage in a conspiracy to violate Plaintiff's rights. Finally, no facts show that Goldish engaged in IIED against Plaintiff. Therefore, Goldish is entitled to summary judgement as a matter of law.

## I.   <u>Defendant Goldish Should be Granted Immunity as to All of Plaintiff's Claims.</u>

Defendant Goldish is entitled to summary judgment on all the federal claims asserted against her because no reasonable jury could conclude, based on the admissible evidence of record, that Plaintiff can satisfy any of the requirements to establish that Goldish violated Plaintiff's constitutional rights. First, Plaintiff cannot establish that Goldish was acting in any capacity other than as an ASA from the Cook County State's Attorney's Office ("CCSAO") Felony Review Unit who was preparing for the initiation of a prosecution or judicial proceedings when Goldish spoke to witnesses and memorialized witness statements. Therefore, she is protected by the doctrine of absolute prosecutorial immunity.

Alternatively, if this Court reasons that absolute immunity does not apply, Goldish is entitled to qualified immunity because Plaintiff must first establish that the conduct of which he complains violated a constitutional right, and that the constitutional rights allegedly violated were clearly

established as to Goldish. Plaintiff is unable to do so. Under these circumstances, Goldish is entitled to summary judgment on Plaintiff's federal claims.

A. **<u>ASA Goldish is entitled to absolute immunity.</u>**

It is well-settled that prosecutors have absolute immunity for conduct that is intimately associated with the judicial phase of the criminal process. *Smith v. Power,* 346 F.3d 740, 742 (7th Cir. 2003). A prosecutor is shielded when she acts as an advocate for the State but not when her acts are investigative and unrelated to the preparation and initiation of judicial proceedings. *Id.* Because Goldish was acting solely as a prosecutor and not as an investigator at the time of the alleged wrongful conduct, and her actions were completely and totally related to preparation and initiation of a judicial proceeding, absolute immunity applies, and the federal claims must be dismissed.

Unlike the prosecutors in *Whitlock v Brueggermann,* 682 F. 3d 567(7th Cir. 2012) and *Fields v Wharrie,* 740 F. 3d 1107 (7th Cir. 2014), who were involved in investigating the crime before having probable cause to arrest, Goldish took no action related to the initiation of murder charges until after four witnesses positively identified Plaintiff and after Plaintiff was in police custody. SOF ¶¶ 5 – 11, 14 – 15, 19 - 21. Plaintiff had already been arrested by the police before Goldish spoke to him and Goldish was only there to memorialize witness statements, review the case, and recommend approval or rejection of charges. SOF ¶¶ 19, 22 – 50.

Courts have consistently found that memorializing witness statements by an ASA falls on the prosecutorial rather than the investigative side of the line. *See Kitchen v. Burge,* 781 F.Supp.2d 721, 730 (N.D. Ill. 2011) (collection of cases). Courts have, also, reasoned that prosecutorial immunity applies when a prosecutor prepares to initiate a judicial proceeding. *Van de Kamp v. Goldstein,* 555 U.S. 335, 344 (2009) citing *Burns v. Reed,* 500 U.S. 478, 496 (1990), *see also*

*Serrano v. Guevara,* 315 F. Supp. 3d 1026, 1034 (N.D. Ill. 2020). However, it does not apply when prosecutors give advice to police during a criminal investigation, make statements to the press, or when they act as a complaining witness. *Van de Kamp*, 555 U.S. at 344 (internal citations omitted).

In this case, Goldish's actions amount to nothing more than prosecutorial actions, in line with the District Court's ruling in *Bianchi v. McQueen*. In *Bianchi,* the plaintiff politician sued several Special ASAs for bringing charges against him which were ultimately dismissed. *Bianchi v. McQueen,* 917 F.Supp.2d 822, 824 (N.D. Ill., 2013). However, the District Court reasoned that absolute immunity should apply because the special ASAs merely reviewed reports by detectives, took witness statements, and presented the evidence to a grand jury for indictment. *Id.* at 830 - 31. Like the special ASAs in *Bianchi,* Goldish went to Area 4 after four witnesses identified Plaintiff in both a line up and photos and after Plaintiff was arrested by police officers. SOF ¶¶ 5 – 11, 14 – 15, 19 – 21. Goldish reviewed reports, took witness statements, and presented everything to her supervisor for a recommendation of charges. Absolute immunity should apply.

A ruling to the contrary would erode the immunity protections afforded each and every ASA that has reviewed reports and taken statements from a potential witness in a criminal proceeding. Here, Goldish was acting within her core functions as a prosecutor when she interviewed witnesses to see what they stated about the Plaintiff, reviewed witness identification and other evidence produced by detectives, took steps to have each statement summarized and signed, and under the supervision of Supervisor Morris recommended that Plaintiff be charged with murder. SOF ¶¶ 22 – 50.

For these reasons, Plaintiff's constitutional claims against Goldish are barred by the doctrine of absolute prosecutorial immunity. Summary judgment should therefore be entered in

favor of Goldish as to Counts I, IV, and V of Plaintiff's Second Amended Complaint.

B. **In The Alternative, ASA Goldish is Entitled to Qualified Immunity.**

If the court should find that Goldish's actions were somehow investigative in nature, all Plaintiff's federal claims should still be dismissed against Goldish under the doctrine of qualified immunity.

A government official is entitled to qualified immunity for conduct that 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Fields v Wharrie*, 740 F.3d 1107, 1109 (7th Cir. 2014); citing *Pearson v Callahan*, 555 U.S. 223, 231 (2009), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The focus is on the official's conduct; not on whether her conduct gave rise to a tort in a particular case. *Fields,* 740 F.3d at 1114. As the Court noted in *Harlow v. Fitzgerald*, 457 U.S. at 819, the test for qualified immunity is "the objective legal reasonableness of an official's acts. Where an official could be expected to *know* that certain conduct would violate statutory or constitutional rights, he should be made to hesitate…" [Emphasis added] *Fields*, 740 F.3d at 1114. If Goldish has no reason to know that her conduct would violate a statutory or constitutional right, she is entitled to qualified immunity.

In determining whether to grant qualified immunity to a public employee, two central questions must be addressed: (1) whether the plaintiff has alleged a deprivation of a constitutional right at all, and (2) whether the right at issue was clearly established at the time and under the circumstances presented. *Whitlock v. Brueggermann*, 682 F.3d 567, 576 (7th Cir. 2012); citing *Pearson*, 555 U.S. at 232; *Gill v. City of Milwaukee,* 850 F.3d 335, 340 (7th Cir. 2017).

First, Goldish came to Area 4 after: four eyewitnesses made statements to detectives at Area 4, after Plaintiff was identified by the eyewitnesses in both photos and line up, and after

Plaintiff was arrested. SOF ¶¶ 5 – 11, 14 – 15, 19 – 21. Second, all four eye witnesses all gave statements to Goldish indicating that Plaintiff was the shooter and all were given the opportunity to speak about their comfortability or lack thereof with police personnel and no complaints were made. SOF ¶¶ 25 – 43. Third, the only witness that alleges coercion of any kind by other Defendants, Cristina Izquierdo, testified that she did not tell Goldish about any alleged coercive misconduct by Defendants. SOF ¶ 47. Therefore, summary judgment should be entered in favor of Goldish as to Counts I, IV, and V of Plaintiff's Second Amended Complaint.

II. **The Evidence Fails to Demonstrate that Goldish Knowingly Fabricated Evidence Against Plaintiff to Convict Him.**

There is no evidence in this case that even suggests that Goldish fabricated evidence against the Plaintiff, therefore this claim must be dismissed. In order to prove witness statements were fabricated, Plaintiff must establish that Goldish, individually, jointly and/or in conspiracy with the Defendant police officers, manufactured it. *Whitlock, 682 f.3d at 580.* This is a high bar to clear, requiring proof that Goldish caused witnesses to provide her with statements that Goldish knew, with certainty, were false. *Fields,* 740 F.3d at 1114; *Petty v City of Chicago,* 754 F.3d 416, 420 (7th Cir. 2014) [wherein the Court noted that, "a prosecutor fabricating evidence that she knows to be false is different than getting 'a reluctant witness to say what may be true'"]. Evidence that merely suggests that Goldish had reason to doubt witnesses' veracity, which she did not, is insufficient. *Coleman v. City of Peoria*, 925 F.3d 336, 346 (7th Cir. 2019). Further the fabricated evidence must be something that Defendant foreseeably knew or should have known would cause Plaintiff harm. *See Walker v. White,* No. 16 CV 7024, 2021 WL 1058096 *7 (N.D. Ill. 2021).

Like the plaintiff in *Bianchi,* the plaintiff must show that the ASA knew about the alleged fabricated statements. In *Bianchi,* the court held that the plaintiff did not show evidence of fabricated statements because, the facts showed the prosecutor, "interviewed witnesses and

reviewed reports by [detectives]…" *Bianchi,* 917 F. Supp. 2d. at 831 – 832.

In this case, there is no evidence that Goldish knew or had reason to know about any alleged false witness statements. In fact, the only witness who states that there were any alleged poor interactions with any Defendant is Cristina Izquierdo, but she stated that she never told Goldish about any of the alleged misconduct by police personnel. SOF ¶ 47. Further Goldish stated that she did not personally observe Cristina Izquierdo in any pain or discomfort at the time of the interview. SOF ¶ 48. In contrast, Lorena Ricardo and Apolinar Meija testified that they felt comfortable and maintain that they identified Plaintiff properly with Goldish. SOF ¶¶ 29 - 38. None of these facts support the allegation that Goldish engaged in any actions to falsify evidence against Plaintiff. There is not one shred of evidence indicating that Goldish did anything other than review reports, interview witnesses, memorialize witness statements, and recommend charges with the approval of a supervisor. SOF ¶¶ 19 – 50. Therefore, the Court should dismiss Count I against Goldish.

III. **Goldish is Entitled to Summary Judgement on Plaintiff's Claim for Failure to Intervene.**

Goldish cannot be held liable for failure to intervene because no underlying constitutional violation was brought to her attention. "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005); citing *Fillmore v. Page*, 358 F.3d 496, 503 (7th Cir. 2004).

Even assuming, *arguendo,* that the facts are sufficient to establish a constitutional violation, the burden is on plaintiff to demonstrate that the defendant (1) *knew* that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it. *Gill v City of Milwaukee,* 850 F.3d 335, 342 (7th Cir. 2017), *citing Yang v. Hardin*, 37 F.3d 282,285 (7th Cir. 1994). Because Plaintiff is unable to establish that Goldish knew witnesses' statements were false, it follows that she would

not have known that a constitutional violation was committed and therefore cannot be held liable for failure to intervene.

The instant case has similarities to *Hobbs v. Cappelluti.* In *Hobbs,* a plaintiff sued Lake County ASAs alleging they failed to intervene in a conspiracy to convict him of murder, after he was later exonerated by DNA evidence. *Hobbs v. Cappelluti,* 899 F. Supp. 2d, 738, 748 (N.D. Ill. 2013). The plaintiff sued the ASAs for failure to intervene in the police investigation. *Id.* at 748. The court reasoned that in Illinois ASAs do not have police powers and cannot command police operations, so there is no duty for ASAs to intervene in police investigations. *Hobbs,* 899 F. Supp. 2d at 772.

Based on the record, Plaintiff cannot establish that Goldish, as a Felony Review ASA who came to Area 4 to determine if CCSAO could recommend charges, had a duty to intervene in a police investigation where Plaintiff was identified by four witnesses and arrested by officials prior to Goldish's arrival at Area 4. SOF ¶¶ 5 – 11, 14 – 15, 19 – 21. No witnesses ever relayed to Goldish that they were mistreated. SOF ¶¶ 25 – 43. There is nothing in the record indicating that Goldish became aware of any constitutional violation that required her intervention. SOF ¶¶ 25 – 43. Under these circumstances, Goldish is entitled to summary judgment on Count V.

IV. **<u>Goldish is Entitled to Summary Judgement as to Civil Conspiracy Claims</u>**

Plaintiff contends that Goldish either individually, jointly and/or in conspiracy with the Defendant police officers, violated Plaintiff's constitutional rights by (1) coercing witnesses into making false statements against their will that was subsequently used against him in the criminal proceedings; and/or by (2) fabricating witnesses' statements, knowing that it was false but nonetheless using it to detain and convict him. The burden is on Plaintiff to come forward with sufficient evidence to prove these allegations. Plaintiff cannot do so.

**A. <u>Plaintiff Fails Establish a Civil Conspiracy Claim under 42 U.S.C. § 1983</u>**

In order for Goldish to be held liable for conspiracy under 42 U.S.C. § 1983, Plaintiff must "show an underlying constitutional violation" and "demonstrate that the defendants agreed to inflict the constitutional harm." *Hurt v. Wise,* 880 F. 3d 831, 842 (7th Cir. 2018) overruled for other reasons by *Lewis v. City of Chicago,* 914 F.3d 472 (7th Cir. 2020). Since no underlying constitutional violation arose from this incident, Goldish is also entitled to summary judgment on the corresponding conspiracy claims. *Gill v City of Milwaukee,* 850 F.3d 335, 341 – 342 (7th Cir. 2017), *citing House v. Belford*, 956 F.2d 711,720 (7th Cir. 1992).

The cases, *Bianchi* and *Hobbs* affirmatively show that Goldish engaged in pure prosecutorial behavior. *Bianchi,* 917 F. Supp.2d. at 831 – 832; *Hobbs,* 899 F. Supp.2d at 772. Goldish arrived at Area 4 after there were eight affirmative identifications of the Plaintiff by four witnesses and Plaintiff was in police custody. SOF ¶¶ 5 – 11, 14 – 15, 19 – 21. Furthermore, when Goldish gave her standard question about complaints none of the witnesses made any complaints. SOF ¶¶ 25 – 43.

As the judge stated in *Hobbs,* to be a conspirator, there must be voluntary participation. *Hobbs,* 899 F. Supp. 2d at 753 – 754. There is no evidence, circumstantial or otherwise, that confirms the existence of an agreement between Goldish and the other Defendants to violate Plaintiff's constitutional rights. Any suggestion to the contrary is based on nothing more than mere speculation. Goldish is therefore entitled to summary judgment on Count IV.

**B. <u>Plaintiff Fails to Establish a Civil Conspiracy Claim under Illinois Law.</u>**

Similar to the civil conspiracy claim under 42 U.S.C. § 1983, Plaintiff fails to prove a civil conspiracy claim under Illinois law. To state a claim for civil conspiracy, a plaintiff must allege that a combination of two or more people for the purpose of accomplishing a tortious or unlawful

goal used unlawful means. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (1994) citing *Smith v. Eli Lilly Co.* 137 Ill. 2d 222, 234 (1990). The function of a conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who merely planned, assisted, or encouraged the wrongdoer's acts. *Adcock*, 164 Ill. 2d at 62. (internal citations omitted).

Just like the Plaintiff in *Hobbs,* Plaintiff must establish that Goldish voluntarily participated in a conspiracy to recommend charging Plaintiff for murder. The facts of this case instead show that Goldish was presented with facts from investigators such as witness statements and positive identifications. SOF ¶¶ 5 – 11, 14 – 15. After review of the facts and memorializing witness statements, Goldish spoke to her supervisor, Tisa Morris, who recommended the approval of murder charges. SOF ¶ 50.

There is no evidence, circumstantial or otherwise, that confirms the existence of an agreement between Goldish and any other Defendant to violate Plaintiff's constitutional rights. Any suggestion to the contrary is based on speculation. Goldish is therefore entitled to summary judgment on Count X.

V.      **Goldish is Entitled to Summary Judgment on Plaintiffs' State Law Claim for Intentional Infliction of Emotional Distress (IIED).**

Plaintiff fails to produce any evidence of intentional infliction of emotional distress and therefore this claim must be dismissed. To state a claim for intentional infliction of emotional distress, a plaintiff must allege that "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) defendants' conduct actually caused severe emotional distress." *Lifton v. Bd. Of Education of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 803 N.E.2d 619, 625 (1st Dist. 2004).  To establish extreme and outrageous conduct, Plaintiff must allege more than "mere insult, indignities, threats, annoyances,

petty oppression or trivialities." *Pub. Fin. Corp. v. Davis*, 66 Ill.2d 85, 89 (1997). "Rather, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Id.* (quoting *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 21 (1992)).

There is nothing in the record that suggests Goldish's conduct was extreme and outrageous. Goldish came to Area 4 after initial witness statements were taken, Plaintiff was arrested by officials, and witnesses made a second identification through police lineup. SOF ¶¶ 5 – 11, 14 – 15. Goldish also spoke to the four eyewitnesses and confirmed the police identifications. SOF ¶¶ 25 – 43. Furthermore, when Goldish arrived at Area 4 she spoke to Plaintiff briefly and stopped speaking to him immediately after learning he asserted his right to an attorney. SOF ¶ 24. Here, Goldish was acting within her core functions as a prosecutor and the Illinois Supreme Court has held that people merely performing their job functions does not constitute extreme and outrageous conduct. *See Schweihs v. Chase Home Finance, LLC,* 2016 IL 120041 ¶¶ 54 – 61. There is not one shred of evidence to show that Goldish caused Plaintiff's purported emotional distress. Therefore, summary judgment should be granted in favor of Goldish as to Count VII.

## <u>CONCLUSION</u>

While erroneous convictions are unquestionably human tragedies, a vacated criminal conviction does not automatically establish that an individual's constitutional rights were violated or that the evidence was fabricated. Here, Plaintiff has failed to present sufficient evidence to support his claim that Goldish violated his constitutional rights or committed tortious acts against him. The record does not present a genuine issue of material fact for trial as it relates to Defendant Goldish. For the reasons stated above, and those in Goldish's supporting documents, Goldish's Motion for Summary Judgement should be granted as to all counts directed to her namely, Count

I under 19 U.S.C. § 1983 - Fabrication of Evidence, Count IV under 19 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights, Count V under 19 U.S.C. § 1983 – Failure to Intervene, Count VII- under Illinois law - Intentional Infliction of Emotional Distress, and Count X under Illinois Law – Civil Conspiracy. Defendant Goldish further request that this Court any other relief this court deems equitable and just.

Respectfully Submitted,
MEGAN GOLDISH

 /s/Kenneth Battle_____

Kenneth M. Battle
Michele J. Braun
Alexis D.M. Carr
O'CONNOR & BATTLE, LLP
111 W Jackson, Blvd., Suite 1700
Chicago, IL 60604
312-422-9400
kbattle@hoblawfirm.com
mbraun@mokblaw.com
acarr@mokblaw.com

CERTIFICATE OF SERVICE

I, Kenneth M. Battle, an attorney, certify that a copy of the attached instrument was served via electronic case filing to all parties of record, on this 24th day of August, 2022.

/s/ Kenneth M. Battle_____
