**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| John Velez, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| City of Chicago; Chicago Police Officers | ) Case No. 18-cv-8144 |
| Michael R. Bocardo, Michael Dyra, John A. | ) |
| Cruz, Sam Cirone, Patrick O'Donovan, | ) Honorable Edmond E. Chang |
| Kriston Kato, Bradul A. Ortiz, Michael J. | ) |
| Walsh, Victor M. Perez, D. Wolverton | ) Magistrate Judge Jeffrey Cole |
| (#20014), J. Botwinski (#20392), A. | ) |
| Jaglowski (#20196), Sgt. D. Walsh, John | ) |
| Farrell, and Unknown Officers; Cook County | ) |
| Sheriff's Department Detectives James Davis | ) |
| and John Sullivan and Unknown Sheriff's | ) |
| Department Officers; Cook County Assistant | ) |
| State's Attorney Megan Goldish; and Cook | ) |
| County, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT MEGAN GOLDISH'S LOCAL RULE 56.1(a)(3)**
**STATEMENT OF UNCONTESTED FACTS**

Defendant Former Assistant State's Attorney Megan Goldish ("Goldish"), by and

through her attorneys Kenneth Battle, Michele Braun, and Alexis Carr of O'Connor & Battle,

LLP submit her 56.1(a)(3) statement of undisputed material facts in support of her motion for

summary judgement as to all counts in Plaintiff John Velez's Second Amended Complaint as

directed toward her, namely Counts I, IV, V, VII, and X and state as follows:

1.      Plaintiff John Velez ("Plaintiff") is a resident of Midlothian, Illinois. (Exhibit 1:

Deposition of John Velez hereinafter, Ex. 1 p. 487:22 – 23).

2.      At all relevant times herein, Defendant Goldish was employed as an Assistant

State's Attorney ("ASA") with the Cook County State's Attorney's Office ("CCSAO") assigned

1

to the Felony Review Unit. (Exhibit 2: Plaintiff's Second Amended Complaint hereinafter, Ex. 2 ¶ 15; Exhibit 3: Deposition of Megan Goldish hereinafter Ex. 3 pp. 41:15- 25, 42: 1-19).

## JURISDICTION

3.      This court has jurisdiction and venue is proper in this lawsuit. (Ex. 2 ¶¶ 9 -10.)

## UNDISPUTED FACTS

4.      On March 26, 2001, Goldish was assigned with the CCASO Felony Review Unit as an ASA with deputies and a trial supervisor who oversaw her work. (Ex. 3 pp. 49:22 – 25, 50:1 – 25, 51: 1 – 16.).

5.      On March 26, 2001, around 11:00 pm Goldish was notified that detectives needed a Felony Review ASA dispatched to Area 4 to review the case and make a charging decision related to the Anthony Hueneca murder investigation. (Ex. 3 pp. 55: 18 -25, 56: 1 – 25, 57:1 – 5).

6.      Goldish arrived at Area 4 about 20 minutes after the notification, spoke to police personnel, and read officers' reports prior to interviewing witnesses. (Ex. 3 pp. 57:1-25, 58: 1-14).

7.      From the reports and/or speaking to police personnel, Goldish learned that, on March 19, 2001, Anthony Hueneca was shot and killed at 2143 S. Marshall Blvd. Chicago, Illinois. (Ex. 2 ¶ 17; Ex. 3 pp. 93: 22- 25, 94:1 - 7).

8.      From the reports and/or speaking to police personnel, Goldish learned that, on the night of March 19, 2001, four friends, Lorena Ricardo, Micaela Gutierrez, Apolinar Mejia, and Gustavo Rivera were leaving La Terreza, a night club. (Ex. 3 p. 58:8-25).

9.      From the reports and/or speaking to police personnel, Goldish learned that after the four friends left the night club they made a stop, allowing Gustavo Rivera to exit the vehicle at or about 2143 S. Marshall Blvd. Chicago, Illinois. (Ex. 3 pp. 58:8-25, 62:8-63:6).

2

10. From the reports and/or speaking to police personnel, Goldish learned that the three remaining friends in the vehicle, Lorena Ricardo, Micaela Gutierrez, and Apolinar Mejia, saw a man brandish a gun and then heard gun fire. (Ex. 3 p. 58:8-25, 62:8-63:6).

11. From the reports and/or speaking to police personnel, Goldish learned that the last remaining friend, Gustavo Rivera, witnessed the man shoot a gun while he was in a building at or about 2143 S. Marshall Blvd. Chicago, Illinois. (Ex. 3 pp. 58-25, 62:8-63:6).

12. From the reports and/or speaking to police personnel, Goldish learned that Detective Walsh was assigned to investigate the murder of Anthony Hueneca on March 19, 2001. (Ex. 3 pp. 58-25, 62:8-63:6).

13. From the reports and/or speaking to police personnel, Goldish learned that Detective Walsh and other members of the Anthony Hueneca murder investigation team determined Lorena Ricardo, Micaela Gutierrez, Apolinar Mejia, and Gustavo Rivera witnessed events related to the murder of Anthony Hueneca. (Ex. 3 pp. 58-25, 62:8-63:6).

14. From the reports and/or speaking to police personnel, Goldish learned that on March 20, 2001, Lorena Ricardo, Micaela Gutierrez, and Apolinar Mejia, were questioned by detectives, shown photos and all identified Plaintiff as the subject brandishing a gun on March 19, 2001, while they were in a car. (Ex. 3 pp. 97: 2 – 25, 98: 1 – 21; Exhibit 4: Deposition of Lorena Ricardo, hereinafter Ex. 4 p. 293: 10 – 21; Exhibit 5: Deposition of Apolinar Mejia hereinafter Ex. 5 p. 48: 4 - 24, 49:1 – 14).

15. From the reports and/or speaking to police personnel, Goldish learned that on March 20, 2001, Gustavo Rivera also identified Plaintiff as the perpetrator he saw on March 19, 2001 shoot Anthony Hueneca. (Ex. 3 pp. 158:18 – 25, 159:1).

16.     According to the reports Goldish reviewed and/or speaking to police personnel, another set of friends, including Cristina Izquierdo, went to a cemetery on March 21, 2001. (Ex. 3 pp. 58-25, 62:8-63:6; Exhibit 6: Deposition of Cristina Izquierdo hereinafter Ex. 7 p. 73: 15 – 21).

17.     17.16.  According to the reports Goldish reviewed and/or speaking to police personnel, gunfire erupted at the cemetery, injuring Cristina Izquierdo who was pregnant with Plaintiff's child. (Ex. 3 pp. 58-25, 62:8-63:6; Ex. 6 pp. 17: 7 – 16, 18:10 – 17).

18.     According to the reports Goldish reviewed and/or speaking to police personnel, Plaintiff visited Cristina Izquierdo in the hospital and stated he felt sorry that she was shot and injured. (Ex. 1 p. 191:7 – 13, 191: 8 – 15, 194: 17 – 20; Ex. 6 p. 47: 2 – 5).

19.     According to the reports Goldish reviewed and/or speaking to police personnel, Chicago Police officers arrested Plaintiff for the murder of Anthony Hueneca on March 25, 2001. (Ex. 1 pp: 77: 16 – 19; Ex. 3 pp. 80:17 – 81:16).

20.     According to the reports Goldish reviewed and/or speaking to police personnel, officers placed Plaintiff in a line up after his arrest. (Ex. 1 p. 329: 1- 6; Ex. 3 pp. 80:17 – 81:16)

21.     Lorena Ricardo, Micaela Gutierrez, Apolinar Mejia, and Gustavo Rivera again identified Plaintiff as the shooter they saw. (Ex. 3 pp. p. 95: 228: 16 – 19, 97: 2 – 25, 98: 1 – 21 ; Ex. 4 p. 293: 10 – 21; Ex. 5 pp. 48: 4- 24, 49:1 – 14)

22.     From March 26, 2001, through March 27, 2001, Goldish interviewed various witnesses related to the Anthony Hueneca murder. (Ex. 3 p. 79:1 – 18).

23.     Goldish spoke to the witnesses in chronological order. (Ex. 3 p. 79:1-18).

4

24. Goldish had a brief exchange with the Plaintiff where he stated that he had a lawyer, and Goldish ended the exchange. (Ex. 1 pp. 313:1 – 24, 314:1 – 3, 337: 14 – 24; 338: 1-24, 339: 1- 12; Ex. 3 pp. 62:21-25, 63: 1-16, 184:23-25, 187:19 – 25).

25. The first witness Goldish spoke to was Micaela Gutierrez. (Ex. 3 pp. 79: 10 – 14, 84:3-12).

26. During Goldish's conversation with Micaela Gutierrez, she spoke to about her ability to see the perpetrator on March 19, 2001. (Ex. 3 103:18 -15).

27. Micaela Gutierrez described the gun brandished by a person during the March 19, 2001, incident. (Ex. 3:1 -17).

28. At the end of the conversation Goldish asked if she had any complaints about her treatment and Micaela Gutierrez reported no complaints. (Ex. 3 p. 104:18-24, 107:13 - 14).

29. The second witness Goldish spoke to was Lorena Ricardo. (Ex. 3 pp. 79: 1-18, 84: 3 -12).

30. When Lorena Ricardo was interviewed by police officers, she gave them a description Plaintiff and stated that she did not lie because, "There was nothing to lie about." (Ex. 4 pp. 203: 13 – 24, 204:1 – 21).

31. Detectives notified Goldish that Lorena Ricardo identified Plaintiff as perpetrator in both the photo array and line up prior to Goldish's arrival at Area 4. (Ex. 3 p. 118: 21 – 24, Ex. 4 p. 293: 10 – 21).

32. At the end of the conversation Goldish asked if she had any complaints about her treatment and Lorena Ricardo had no complaints. (Ex. 3 p. 113: 21 – 23).

33. The third witness Goldish interviewed was Apolinar Mejia. (Ex. 3 p. 79:1 – 6).

5

34. Apolinar Mejia spoke to Goldish and told her that he was driving on March 19, 2001 when a perpetrator walked up to car. (Ex. 3 p. 117:9 – 25).

35. Apolinar Mejia testified that he did remember "the people were talking to me one after another and I just said whatever I felt comfortable [saying]". (Ex. 5 p 92:15 – 22).

36. Detectives notified Goldish that Apolinar Mejia identified the Plaintiff as the perpetrator after police showed him photos in a book prior to Goldish's arrival at Area 4. (Ex. 3 pp. 119: 20 – 25, 120: 1 - 2 ; Ex. 5 pp. 48: 4- 24, 49:1 – 14)

37. Detectives told Goldish that Apolinar Mejia also identified the same man in police line- up prior to Goldish's arrival at Area 4. (Ex. 3 p. 119: 16 – 19 Ex. 5 pp. 54: 7 – 24, 55: 1 -24, 56: 1 – 6).

38. Apolinar Mejia testified that Plaintiff was the man he identified. (Ex. 5 pp. 56: 13 – 24, 57: 1 – 11).

39. The fourth witness that Goldish spoke to was Gustavo Rivera. (Ex. 3 p. 79:1 – 6).

40. During Goldish's interview with Gustavo Rivera, Gustavo Rivera told her that he recognized Anthony Hueneca as the perpetrator. (Ex. 3 pp. 158:18 – 25, 159:1).

41. Gustavo Rivera also told Goldish that he never saw the perpetrator before. (Ex. 3 p. 159:15 – 17).

42. Gustavo Rivera told Goldish that he learned that the victim was Anthony Hueneca after the shooting occurred. (Ex. 3 pp. 159: 18 – 25, 160: 1 – 23, 170:4 – 5).

43. Goldish also learned that Gustavo Rivera identified the Plaintiff as the perpetrator prior to her arrival at Area 4. (Ex. 3 p. 95: 228: 16 – 19).

44. The fifth witness that Goldish spoke to was Cristina Izquierdo. (Ex. 3 p. 79: 1 – 6, Ex. 6 p. 60:16-18)

45.     When Cristina Izquierdo entered the room, Goldish introduced herself and Goldish began speaking to her. (Ex. 3 p. 190: 4 – 13, Ex. 6 pp. 60: 16 – 24, 61:1 – 3).

46.     During the time Cristina Izquierdo spoke to Goldish, Goldish asked Cristina Izquierdo questions, and Cristina Izquierdo signed a sworn statement drafted by Goldish. (Ex. 3 pp. 190:14 -25, 191:1 – 18, Ex. 6 pp. 86: 23, 87: 18 -19, 158:13-15, 262:24, 263: 1 – 3, 22 – 24, 264:1 – 16, 267:13 – 15).

47.     At the end of the conversation Goldish asked if she had any complaints related to her treatment and Cristina Izquierdo did not tell Goldish about any her alleged poor interactions with any police personnel. (Ex. 3 pp. 104: 190:19 – 25, 218: 5 – 13; Ex. 6 pp. 265: 11 – 24, 266: 1 – 24).

48.     Goldish did not observe anything that made her believe that Cristina Izquierdo was in pain. (Ex. 3 194: 6 – 21).

49.     After speaking to witnesses, looking at evidence, and memorializing witness statements Goldish spoke to trial supervisor, Tisa Morris. (Ex. 3 pp. 225: 13 – 25, 226: 1 – 8).

50.     After Goldish spoke to Supervisor Morris, Morris recommended the approval of murder charges against Plaintiff for the murder of Anthony Hueneca. (Ex. 3 p. 226: 10 – 14).

Respectfully Submitted,
MEGAN GOLDISH

/s/Kenneth Battle_____

Kenneth M. Battle
Michele J. Braun
Alexis D.M. Carr
O'CONNOR & BATTLE, LLP
111 W Jackson, Blvd., Suite 1700
Chicago, IL 60604
312-422-9400
kbattle@hoblawfirm.com
mbraun@mokblaw.com
acarr@mokblaw.com

7

## CERTIFICATE OF SERVICE

I, Kenneth M. Battle, an attorney, certify that a copy of the attached instrument was served via electronic case filing to all parties of record, on this 24th day of August, 2022.


/s/ Kenneth M. Battle_____