## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| John Velez, | ) |
| | ) |
| Plaintiff, | ) Case No. 18-cv-8144 |
| | ) |
| v. | ) |
| | ) Honorable Edmond E. Chang |
| City of Chicago, et al., | ) |
| | ) |
| Defendants. | ) JURY TRIAL DEMANDED |
| | ) |

## PLAINTIFF'S RESPONSE TO DEFENDANT MEGAN GOLDISH'S CORRECTED LOCAL RULE 56.1(a)(3) STATEMENT OF UNCONTESTED FACTS

Plaintiff, by and through his attorneys, Loevy & Loevy, submits the following Response to Defendant Megan Goldish's Local Rule 56.1(a)(3) Statement of Undisputed Facts:

1.  Plaintiff John Velez ("Plaintiff") is a resident of Midlothian, Illinois. (Exhibit 1: Deposition of John Velez hereinafter, Ex. 1 p. 487:22 – 23).

**RESPONSE:** Admit.

2.  At all relevant times herein, Defendant Goldish was employed as an Assistant State's Attorney ("ASA") with the Cook County State's Attorney's Office ("CCSAO") assigned to the Felony Review Unit. (Exhibit 2: Plaintiff's Second Amended Complaint hereinafter, Ex. 2 ¶ 15; Exhibit 3: Deposition of Megan Goldish hereinafter Ex. 3 pp. 41:15- 25, 42: 1-19).

**RESPONSE:** Admit.

### JURISDICTION

3.  This court has jurisdiction and venue is proper in this lawsuit. (Ex. 2 ¶¶ 9 -10.)

**RESPONSE:** Admit.

### UNDISPUTED FACTS

1

4. On March 26, 2001, Goldish was assigned with the CCASO Felony Review Unit as an ASA with deputies and a trial supervisor who oversaw her work. (Ex. 3 pp. 49:22 – 25, 50:1 – 25, 51: 1 – 16.).

**RESPONSE:** Admit that Goldish gave this testimony.

5. On March 26, 2001, around 11:00 pm Goldish was notified that detectives needed a Felony Review ASA dispatched to Area 4 to review the case and make a charging decision related to the Anthony Hueneca murder investigation. (Ex. 3 pp. 55: 18 -25, 56: 1 – 25, 57:1 – 5).

**RESPONSE:** Admit that Goldish gave this testimony.

6. Goldish arrived at Area 4 about 20 minutes after the notification, spoke to police personnel, and read officers' reports prior to interviewing witnesses. (Ex. 3 pp. 57:1-25, 58: 1-14).

**RESPONSE:** Admit that Goldish gave this testimony.

7. From the reports and/or speaking to police personnel, Goldish learned that, on March 19, 2001, Anthony Hueneca was shot and killed at 2143 S. Marshall Blvd. Chicago, Illinois. (Ex. 2 ¶ 17; Ex. 3 pp. 93: 22- 25, 94:1 - 7).

**RESPONSE:** Deny, as the cited evidence does not support the proposition that Defendant Goldish learned about the Hueneca murder from reports and/or speaking to police personnel. The cited testimony states what Defendant Goldish recalls that Micaela "Mima" Gutierrez said to her when Goldish interviewed her at the police station.

8. From the reports and/or speaking to police personnel, Goldish learned that, on the night of March 19, 2001, four friends, Lorena Ricardo, Micaela Gutierrez, Apolinar Mejia, and Gustavo Rivera were leaving La Terraza, a night club. (Ex. 3 p. 58:8-25).

**RESPONSE:** Deny, as the cited evidence does not support the proposition that

Defendant Goldish learned this information from reports and/or speaking to police personnel. Defendant Goldish's cited testimony only states that Goldish recalls speaking with Defendant Kato.

9.      From the reports and/or speaking to police personnel, Goldish learned that after the four friends left the night club they made a stop, allowing Gustavo Rivera to exit the vehicle at or about 2143 S. Marshall Blvd. Chicago, Illinois. (Ex. 3 pp. 58:8-25, 62:8-63:6).

**RESPONSE:** Deny, as the cited evidence does not support the proposition that Defendant Goldish learned this information from reports and/or speaking to police personnel. Defendant Goldish's cited testimony only states that Goldish recalls speaking with Defendant Kato but she does not recall anything about the conversation; and that she would have reviewed any paperwork that was available but didn't recall specifics.

10.     From the reports and/or speaking to police personnel, Goldish learned that the three remaining friends in the vehicle, Lorena Ricardo, Micaela Gutierrez, and Apolinar Mejia, saw a man brandish a gun and then heard gun fire. (Ex. 3 p. 58:8-25, 62:8-63:6).

**RESPONSE:** Deny, as the cited evidence does not support the proposition that Defendant Goldish learned this information from reports and/or speaking to police personnel. Defendant Goldish's cited testimony only states that Goldish recalls speaking with Defendant Kato but she does not recall anything about the conversation; and that she would have reviewed any paperwork that was available but didn't recall specifics.

11.     From the reports and/or speaking to police personnel, Goldish learned that the last remaining friend, Gustavo Rivera, witnessed the man shoot a gun while he was in a building at or about 2143 S. Marshall Blvd. Chicago, Illinois. (Ex. 3 pp. 58-25 [sic], 62:8-63:6).

**RESPONSE:** Deny, as the cited evidence does not support the proposition that Defendant Goldish learned this information from reports and/or speaking to police personnel.

Defendant Goldish's cited testimony only states that Goldish recalls speaking with Defendant Kato but she does not recall anything about the conversation; and that she would have reviewed any paperwork that was available but didn't recall specifics.

12.     From the reports and/or speaking to police personnel, Goldish learned that Detective Walsh was assigned to investigate the murder of Anthony Hueneca on March 19, 2001. (Ex. 3 pp. 58-25 [sic], 62:8-63:6).

**RESPONSE:** Deny, as the cited evidence does not support the proposition that Defendant Goldish learned this information from reports and/or speaking to police personnel. Defendant Goldish's cited testimony only states that Goldish recalls speaking with Defendant Kato but she does not recall anything about the conversation; and that she would have reviewed any paperwork that was available but didn't recall specifics.

13.     From the reports and/or speaking to police personnel, Goldish learned that Detective Walsh and other members of the Anthony Hueneca murder investigation team determined Lorena Ricardo, Micaela Gutierrez, Apolinar Mejia, and Gustavo Rivera witnessed events related to the murder of Anthony Hueneca. (Ex. 3 pp. 58-25 [sic], 62:8-63:6).

**RESPONSE:** Object on the basis that the terms "events related to the murder of Anthony Hueneca" is vague and ambiguous. Without waiving and subject to the foregoing objection, deny, as the cited evidence does not support the proposition that Defendant Goldish learned this information from reports and/or speaking to police personnel. Defendant Goldish's cited testimony only states that Goldish recalls speaking with Defendant Kato but she does not recall anything about the conversation; and that she would have reviewed any paperwork that was available but didn't recall specifics.

14.     From the reports and/or speaking to police personnel, Goldish learned that on March 20, 2001, Lorena Ricardo, Micaela Gutierrez, and Apolinar Mejia, were questioned by

detectives, shown photos and all identified Plaintiff as the subject brandishing a gun on March 19, 2001, while they were in a car. (Ex. 3 pp. 97: 2 – 25, 98: 1 – 21; Exhibit 4: Deposition of Lorena Ricardo, hereinafter Ex. 4 p. 293: 10 – 21; Exhibit 5: Deposition of Apolinar Mejia hereinafter Ex. 5 p. 48: 4 - 24, 49:1 – 14).

**RESPONSE:** Deny, as the cited evidence does not support the proposition that Defendant Goldish learned this information from reports and/or speaking to police personnel. Defendant Goldish's cited testimony states that Goldish does not recall whether Gutierrez was shown a photograph of the suspect; she did not document that Gutierrez had identified Plaintiff from a photograph; and Goldish recalls speaking to Gutierrez about where Gutierrez went to high school. Defendant Goldish cites to Ricardo and Mejia's respective 2021 deposition testimony about identifying Plaintiff from photos (Dkt. 304-4, Dkt. 304-5), but that cannot establish what Goldish reviewed or heard at the police station. Defendant Goldish provides no citation for this.

15. From the reports and/or speaking to police personnel, Goldish learned that on March 20, 2001, Gustavo Rivera also identified Plaintiff as the perpetrator he saw on March 19, 2001 shoot Anthony Hueneca. (Ex. 3 pp. 158:18 – 25, 159:1).

**RESPONSE:** Deny, as the cited testimony does not support this proposition. Goldish's cited testimony states that Rivera told her he had an unobstructed view of the perpetrator and he was teen feet away from the victim when he got shot. Further deny because Rivera never saw a perpetrator on March 19, 2001. William Pelmer testified that Rivera admitted to him that Rivera never saw the shooting, and his testimony about the shooting is a complete fabrication. Ex. 20 (Pelmer Dep.) at 22:8-27:1; Ex. 21 (Pelmer Affidavit). Joseph Rivera also testified that Gus Rivera admitted to him that Rivera never saw the shooting, and that he only implicated Plaintiff because the police pressured him. Ex. 19 (J. Rivera affidavit); Ex. 18 (J. Rivera Dep.) at 98:9-99:1; 100:17-101:1.

16.     According to the reports Goldish reviewed and/or speaking to police personnel, another set of friends, including Cristina Izquierdo, went to a cemetery on March 21, 2001. (Ex. 3 pp. 58-25, 62:8-63:6; Exhibit 6: Deposition of Cristina Izquierdo hereinafter Ex. 7 p. 73: 15 – 21).

**RESPONSE:** Deny, as the cited evidence does not support this proposition. Defendant Goldish's cited testimony only states that Goldish recalls speaking with Defendant Kato but she does not recall anything about the conversation; and that she would have reviewed any paperwork that was available but didn't recall specifics. Defendant Goldish cite to Izquierdo's 2021 deposition testimony that Izquierdo went to the cemetery with Alexis, Angelica, and three other men (Dkt. 304-6), but that cannot establish what Goldish reviewed or heard at the police station. Defendant Goldish provides no citation for this.

17.     According to the reports Goldish reviewed and/or speaking to police personnel, gunfire erupted at the cemetery, injuring Cristina Izquierdo who was pregnant with Plaintiff's child. (Ex. 3 pp. 58-25, 62:8-63:6; Ex. 6 pp. 17: 7 – 16, 18:10 – 17).

**RESPONSE:** Deny, as the cited evidence does not support this proposition. Defendant Goldish's cited testimony only states that Goldish recalls speaking with Defendant Kato but she does not recall anything about the conversation; and that she would have reviewed any paperwork that was available but didn't recall specifics. Defendant Goldish cites to Izquierdo's 2021 deposition testimony about being shot at while in a car and being struck in her left lower back (Dkt. 304-6), but that cannot establish what Goldish reviewed or heard at the police station. Defendant Goldish does not provide any citation for this, or any citation that Izquierdo was pregnant with Plaintiff's child.

18.     According to the reports Goldish reviewed and/or speaking to police personnel, Plaintiff visited Cristina Izquierdo in the hospital and stated he felt sorry that she was shot and

injured. (Ex. 1 p. 191:7 – 13, 191: 8 – 15, 194: 17 – 20; Ex. 6 p. 47: 2 – 5).

**RESPONSE:** Deny that Goldish learned this information from reports or speaking to police personnel, as no reports that Goldish reviewed at the police station contained this information and Goldish does not recall any conversations with police personnel. See Ex. 16 (Goldish Dep.) at 62:8-63:6 (Goldish has no independent recollection of her conversation with police when she arrived at Area 4 on March 26, 2001). Defendant Goldish cites to Izquierdo's and Plaintiff's respective 2021 deposition testimony about what happened in the hospital in 2001 (Dkts. 304-1; 304-6), which cannot establish what Goldish reviewed or heard at the police station. Defendant Goldish provides no citations for this.

19.    According to the reports Goldish reviewed and/or speaking to police personnel, Chicago Police officers arrested Plaintiff for the murder of Anthony Hueneca on March 25, 2001. (Ex. 1 pp: 77: 16 – 19; Ex. 3 pp. 80:17 – 81:16).

**RESPONSE:** Admit that Goldish learned from detectives that Plaintiff had been arrested on March 25, 2001, although Defendant Goldish's citation to Plaintiff's 2021 deposition testimony about Plaintiff being in a relationship with Izquierdo when he was arrested on March 25, 2001 cannot establish what Goldish reviewed or heard at the police station.

20.    According to the reports Goldish reviewed and/or speaking to police personnel, officers placed Plaintiff in a line up after his arrest. (Ex. 1 p. 329: 1- 6; Ex. 3 pp. 80:17 – 81:16).

**RESPONSE:** Admit that Goldish learned from detectives that Plaintiff was placed in a lineup after his arrest, although Defendant Goldish's citation to Plaintiff's 2021 deposition testimony about his interactions with his attorney at the police station cannot establish what Goldish reviewed or heard at the police station.

21.    Lorena Ricardo, Micaela Gutierrez, Apolinar Mejia, and Gustavo Rivera again

identified Plaintiff as the shooter they saw. (Ex. 3 pp. p. 95: 228: 16 – 19, 97: 2 – 25, 98: 1 – 21 ; Ex. 4 p. 293: 10 – 21; Ex. 5 pp. 48: 4- 24, 49:1 – 14).

**RESPONSE:** Admit that Ricardo testified that she was confident of her identification of Plaintiff in a lineup on March 26, 2001.

Deny that Gutierrez identified Plaintiff as the shooter she saw, as the cited testimony does not support this proposition. Defendant Goldish's cited testimony states that Goldish does not recall whether Gutierrez was shown a photograph of the suspect; she did not document that Gutierrez had identified Plaintiff from a photograph; and Goldish recalls speaking to Gutierrez about where Gutierrez went to high school. Defendants provide no citation that Gutierrez identified Plaintiff in a lineup.

Deny that Mejia identified Plaintiff as the shooter. The cited testimony states that Mejia identified Plaintiff from a photograph and does not mention anything about a lineup. Ex. 4 (Mejia Dep.) at 49:4-8. Further denied because Mejia testified that when he viewed the lineup containing Plaintiff, Mejia did not recognize the people in the lineup. He had problems choosing the right person from the lineup because the person in the lineup looked so different from the photograph he saw. Mejia asked the officer in the room with him which guy it was, and the officer told him "that guy is the guy." Id. at 51:24-54:23. The person Mejia selected from the lineup did not look like the guy who had threatened Mejia and his friends at the car; he looked heavier than he had been a week earlier. *Id*. at 54:24-55:14. The officer who told him who to pick out the person from the lineup was Defendant Bocardo. *Id*. at 108:10-15.

Deny Rivera identified Plaintiff as the shooter, as Goldish's cited testimony only states that Goldish recalled Rivera telling her that he had an unobstructed view of the shooter, and does not mention anything about a lineup. Further denied because Rivera did not witness the Hueneca shooting. William Pelmer testified that Rivera admitted to him that Rivera never saw the

shooting, and his testimony about the shooting is a complete fabrication. Ex. 20 (Pelmer Dep.) at 22:8-27:1; Ex. 21 (Pelmer Affidavit). Joseph Rivera also testified that Gus Rivera admitted to him that Rivera never saw the shooting, and that he only implicated Mr. Velez because the police pressured him. Ex. 19 (J. Rivera Affidavit); Ex. 18 (J. Rivera Dep.) at 98:9-99:1; 100:17-101:1.

22. From March 26, 2001, through March 27, 2001, Goldish interviewed various witnesses related to the Anthony Hueneca murder. (Ex. 3 p. 79:1 – 18).

**RESPONSE:** Admit that Goldish gave this testimony.

23. Goldish spoke to the witnesses in chronological order. (Ex. 3 p. 79:1-18).

**RESPONSE:** Admit that Goldish claims that she spoke to witnesses in chronological order, but deny that she spoke to them in chronological order. In fact, Goldish delayed speaking to Izquierdo until the early hours of the morning despite knowing that Izquierdo was 18, pregnant, and suffering from a gunshot wound. *See* PSOAF ¶¶ 64-72. Nothing prevented Goldish from speaking to one of the witnesses before the other. Ex. 16 (Goldish Dep.) at 65:14-16. Had Goldish been speaking to witnesses in chronological order, she would have spoken to Izquierdo first, because she supposedly was aware of Gent Velez's murder from the year before. *See* PSOAF ¶¶ 66, 72.

24. Goldish had a brief exchange with the Plaintiff where he stated that he had a lawyer, and Goldish ended the exchange. (Ex. 1 pp. 313:1 – 24, 314:1 – 3, 337: 14 – 24; 338: 1-24, 339: 1- 12; Ex. 3 pp. 62:21-25, 63: 1-16, 184:23-25, 187:19 – 25).

**RESPONSE:** Admit that Defendant Goldish and Plaintiff gave this testimony.

25. The first witness Goldish spoke to was Micaela Gutierrez. (Ex. 3 pp. 79: 10 – 14, 84:3-12).

**RESPONSE:** Admit Defendant Goldish gave this testimony.

26. During Goldish's conversation with Micaela Gutierrez, she spoke to about her ability to see the perpetrator on March 19, 2001. (Ex. 3 103:18 -15).

**RESPONSE:** Admit Defendant Goldish gave this testimony.

27. Micaela Gutierrez described the gun brandished by a person during the March 19, 2001, incident. (Ex. 3:1 -17).

**RESPONSE:** Admit Defendant Goldish gave this testimony.

28. At the end of the conversation Goldish asked if she had any complaints about her treatment and Micaela Gutierrez reported no complaints. (Ex. 3 p. 104:18-24, 107:13 - 14).

**RESPONSE:** Admit Defendant Goldish gave this testimony.

29. The second witness Goldish spoke to was Lorena Ricardo. (Ex. 3 pp. 79: 1-18, 84: 3 -12).

**RESPONSE:** Admit that Defendant Goldish gave this testimony, but deny that Goldish ever interviewed Ricardo. Ricardo testified at her 2021 deposition that she didn't speak to a female prosecutor the night that she was at the police station to view the lineup. Ex. 2 (Ricardo Dep.) at 111:7-22 ("Q. So when you're at the police station, do you have a memory of ever speaking to a female who is a prosecutor by the name of Megan Goldish? A. No.").

30. When Lorena Ricardo was interviewed by police officers, she gave them a description [sic] Plaintiff and stated that she did not lie because, "There was nothing to lie about." (Ex. 4 pp. 203: 13 – 24, 204:1 – 21).

**RESPONSE:** Deny. Ricardo did not give police officers a description of Plaintiff; she gave them a description of the offender. *See* Ex. 2 (Ricardo Dep.) at 206:13-207:18.

31. Detectives notified Goldish that Lorena Ricardo identified Plaintiff as perpetrator in both the photo array and line up prior to Goldish's arrival at Area 4. (Ex. 3 p. 118: 21 – 24, Ex. 4 p. 293: 10 – 21).

**RESPONSE:** Deny, as the cited testimony does not support this proposition. Defendant Goldish's testimony states that she confirmed with Ricardo that Ricardo had identified the

suspect in a lineup. Defendant Goldish's cite to Ricardo's 2021 deposition testimony that she was confident in her identifications of Plaintiff when she looked at photographs and when she went to a lineup (Dkt. 306-4), but that cannot establish what Goldish was told at the police station. Defendant Goldish does not provide any citation for this.

32. At the end of the conversation Goldish asked if she had any complaints about her treatment and Lorena Ricardo had no complaints. (Ex. 3 p. 113: 21 – 23).

**RESPONSE:** Admit that Defendant Goldish gave this testimony but deny that Goldish ever interviewed Ricardo. See Resp. to Goldish SOF at ¶ 29.

33. The third witness Goldish interviewed was Apolinar Mejia. (Ex. 3 p. 79:1 – 6).

**RESPONSE:** Admit that Defendant Goldish gave this testimony, but deny that Goldish ever interviewed Mejia. Mejia testified in his 2021 deposition that he never spoke to a female prosecutor at the police station. Ex. 4 (Mejia Dep.) at 59:21-23.

34. Apolinar Mejia spoke to Goldish and told her that he was driving on March 19, 2001 when a perpetrator walked up to car. (Ex. 3 p. 117:9 – 25).

**RESPONSE:** Admit that Defendant Goldish gave this testimony, but deny that Goldish ever interviewed Mejia. See Resp. to Goldish SOF at ¶ 33.

35. Apolinar Mejia testified that he did remember "the people were talking to me one after another and I just said whatever I felt comfortable [saying]". (Ex. 5 p 92:15 – 22).

**RESPONSE:** Admit that when Mejia was asked in his 2021 deposition, "Do you see that testimony there sir?" at his deposition, his full answer was, "Yes, I see it. I do remember that and it's because I -- I mean I was -- the people were talking to me, one thing after another, and I just said whatever I felt comfortable, but I -- I had time to look at the pictures and find out -- find him through the bunch. That's what I did, and whatever I answered in that time, it's something that I

never planned to say or it -- to say a miracle or things like that. I never -- I don't know why -- why did I say that?" Ex. 4 (Mejia Dep.) at 92:11-23.

36.     Detectives notified Goldish that Apolinar Mejia identified the Plaintiff as the perpetrator after police showed him photos in a book prior to Goldish's arrival at Area 4. (Ex. 3 pp. 119: 20 – 25, 120: 1 - 2 ; Ex. 5 pp. 48: 4- 24, 49:1 – 14).

**RESPONSE:** Deny, as the cited testimony does not support this proposition. The cited testimony states that Goldish confirmed with Mejia that he identified a suspect in a photo array. Defendant Goldish's cite to Mejia's 2021 deposition testimony about identifying Plaintiff from a photo book at the police station (Dkt. 304-5), but that cannot establish what detectives told Goldish about what happened prior to her arrival at Area 4. Defendant Goldish provides no citations for this.

37.     Detectives told Goldish that Apolinar Mejia also identified the same man in police line-up prior to Goldish's arrival at Area 4. (Ex. 3 p. 119: 16 – 19 Ex. 5 pp. 54: 7 – 24, 55: 1 -24, 56: 1 – 6).

**RESPONSE:** Deny, as the cited testimony does not support this proposition. The cited testimony states that Goldish confirmed with Mejia that he identified a suspect in a lineup. Defendant Goldish cites to Mejia's respective 2021 deposition testimony about being told by police to pick Plaintiff out of a lineup (Dkt. 304-5), but that cannot establish what detectives told Goldish about what happened prior to her arrival at Area 4. Defendants provide no citations for this. Further deny because Mejia only identified Plaintiff in a police lineup after Bocardo told him to choose Plaintiff. Ex. 4 (Mejia Dep) at 51:24-54:23-55:14, 108:10-15.

38.     Apolinar Mejia testified that Plaintiff was the man he identified. (Ex. 5 pp.  56: 13 – 24, 57: 1 – 11).

**RESPONSE:** Admit that Mejia testified he identified Plaintiff after Bocardo told him to

choose Plaintiff. Ex. 4 (Mejia Dep) at 51:24-54:23-55:14, 108:10-15.

39. The fourth witness that Goldish spoke to was Gustavo Rivera. (Ex. 3 p. 79:1 – 6).

**RESPONSE:** Admit that Defendant Goldish gave this testimony.

40. During Goldish's interview with Gustavo Rivera, Gustavo Rivera told her that he recognized the Plaintiff as the perpetrator. (Ex. 3 pp. 158:18 – 25, 159:1).

**RESPONSE:** Deny, as the cited testimony does not support this proposition. According to Goldish, Rivera told him that he had an obstructed view of the perpetrator and the victim. Rivera did not mention the Plaintiff. Further deny because Rivera did not see the shooting and could not identify anyone as the perpetrator. *See* Response to Goldish SOF ¶ 21.

41. Gustavo Rivera also told Goldish that he never saw the perpetrator before. (Ex. 3 p. 159:15 – 17).

**RESPONSE:** Admit that Defendant Goldish gave this testimony.

42. Gustavo Rivera told Goldish that he learned that the victim was Anthony Hueneca after the shooting occurred. (Ex. 3 pp. 159: 18 – 25, 160: 1 – 23, 170:4 – 5).

**RESPONSE:** Admit that Defendant Goldish gave this testimony.

43. Goldish also learned that Gustavo Rivera identified the Plaintiff as the perpetrator prior to her arrival at Area 4.  (Ex. 3 p. 95: 228: 16 – 19).

**RESPONSE:** Deny, as the cited testimony does not support this proposition. The cited testimony states that in response to the question, "Is that something you wanted to know from Gus Rivera if the perpetrator was wearing a hood?" Goldish responded that Rivera told her that he had an unobstructed view of the shooter, so "the hood part didn't really matter." Further deny because Rivera did not see the shooting and could not identify anyone as the perpetrator. *See* Response to Goldish SOF ¶ 21.

44. The fifth witness that Goldish spoke to was Cristina Izquierdo. (Ex. 3 p. 79: 1 – 6,

Ex. 6 p. 60:16-18)

**RESPONSE:** Admit that Goldish gave this testimony, although Defendant Goldish's cite to Izquierdo's 2021 deposition testimony does not support this proposition.

45.     When Cristina Izquierdo entered the room, Goldish introduced herself and Goldish began speaking to her. (Ex. 3 p. 190: 4 – 13, Ex. 6 pp. 60: 16 – 24, 61:1 – 3).

**RESPONSE:** Deny that Goldish introduced herself. Goldish did not tell Izquierdo that she was an assistant state's attorney.  Izquierdo did not know who Goldish was and thought she was a secretary. Ex. 27 (Izquierdo Dep.) at 66:5-24.

46.     During the time Cristina Izquierdo spoke to Goldish, Goldish asked Cristina Izquierdo questions, and Cristina Izquierdo signed a sworn statement drafted by Goldish. (Ex. 3 pp. 190:14 -25, 191:1 – 18, Ex. 6 pp. 86: 23, 87: 18 -19, 158:13-15, 262:24, 263: 1 – 3, 22 – 24, 264:1 – 16, 267:13 – 15).

**RESPONSE:** Admit that Izquierdo signed a statement drafted by Goldish, but deny that the statement was sworn. Further deny that Goldish asked Izquierdo questions. According to Izquierdo, Defendant Bocardo took her from one room into another room, Goldish stated her name, and then Goldish said, "Okay. I'm going to write this down. And I just need you to sign here, and you can go home." Ex. 27 (Izquierdo Dep.) at 60:14-3.

47.     At the end of the conversation Goldish asked if she had any complaints related to her treatment and Cristina Izquierdo did not tell Goldish about any her alleged poor interactions with any police personnel. (Ex. 3 pp. 104: 190:19 – 25, 218: 5 – 13; Ex. 6 pp. 265: 11 – 24, 266:1 – 24).

**RESPONSE**: Admit that Goldish testified she asked Izquierdo: "How are you doing," "Do you need anything?"; and "Is there anything you want to say to me outside of police presence?" However, none of the cited testimony supports this paragraph. Defendant Goldish's testimony on

page 104 is about her interactions with Gutierrez. Defendant Goldish's testimony on page 190 is about her conversation with Izquierdo about Izquierdo's background. Deny that Izquierdo did not testify about her "alleged" poor interactions with any police personnel or that she did not tell Goldish about it. First, Izquierdo's poor interactions with police and Goldish were not "alleged." Izquierdo testified at length about her callous treatment by police and Goldish. See PSOAF ¶55-72. Second, Izquierdo told Goldish several times how she was treated: she told Goldish police would not let her use the bathroom so she urinated on herself, and Goldish ignored her and went back to writing a statement. Ex. 27 (Izquierdo Dep.) at 265:11-22. Izquierdo told Goldish that her back was hurting because she had been standing for hours, id. at 266:2-6, and asked Goldish if she was going to get in trouble with DCFS, to which Goldish responded "Don't worry about it. Just sign the paper," id. at 265:1-9.

48. Goldish did not observe anything that made her believe that Cristina Izquierdo was in pain. (Ex. 3 194: 6 – 21).

**RESPONSE:** Admit that Goldish gave this testimony, but deny that Goldish did not observe anything to make her believe that Izquiero was in pain. Izquierdo had been at the station for seven to eight hours; hadn't eaten; hadn't slept; was bleeding from a gunshot wound; was denied medication; had a bloody gauze bandage on her hip that she was not allowed to change; was visibly pregnant and stood for at least an hour in front of Goldish; and had urinated on herself and the floor, which could be seen and smelled. Ex. 27 (Izquierdo Dep.) at 52:15-54:8; 84:4-85:20; 262:8-10; see also PSOAF ¶55-64, 67-71.

49. After speaking to witnesses, looking at evidence, and memorializing witness statements Goldish spoke to trial supervisor, Tisa Morris. (Ex. 3 pp. 225: 13 – 25, 226: 1 – 8).

**RESPONSE:** Admit that Defendant Goldish gave this testimony.

50. After Goldish spoke to Supervisor Morris, Morris recommended the approval of

15

murder charges against Plaintiff for the murder of Anthony Hueneca. (Ex. 3 p. 226: 10 – 14).

**RESPONSE:** Admit that Goldish gave this testimony and clarify that Goldish did not tell Morris about any of the misconduct, including Bocardo and Goldish coercing Izquierdo to sign a fabricated statement, *see* PSOAF ¶54-72.

Dated: November 22, 2022 RESPECTFULLY SUBMITTED:

s/ Danielle Hamilton
Attorney for John Velez

Arthur Loevy
Jon Loevy
Russell Ainsworth
Ruth Brown
Danielle Hamilton
LOEVY & LOEVY
311 North Aberdeen St., 3rd floor
Chicago, IL 60607
Phone: (312) 243-5900
Fax: (312) 243-5902

Jennifer Blagg
LAW OFFICE OF JENNIFER BLAGG
1333 West Devon Ave., Suite 267
Chicago, IL 60660
Phone: (773) 859-0081
Fax: (773) 439-2863